UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

JOAN TRUMAN SMITH

V.

BRYCO ARMS, Inc., et al.

CIVIL ACTION NO:
CV 02 3029 (JBW)

Honorable Jack B. Weinstein

**DEFENDANT, B.L. JENNINGS, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS "THE FIRST
CAUSE OF ACTION – NEGLIGENCE" FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Defendant, B.L. Jennings, Inc. ("BLJ"), by and through its undersigned attorneys, hereby submits this Memorandum of Law in Support of its Motion to Dismiss "The First Cause of Action – Negligence," pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground of failure to state a claim upon which relief can be granted, and, in support thereof, states the following:

**STATEMENT OF FACTS**

This suit was filed by the Plaintiff, Joan Truman Smith, as the administratrix of her daughter's estate, alleging two causes of action, negligence and public nuisance, against various Defendants, including BLJ, Bruce Jennings, all members of the Jennings family, Bryco Arms, Inc. ("Bryco"), Jennings Firearms, Inc., and others, related to a shooting that occurred on May 25, 2000 in a Wendy's fast food restaurant in Flushing, New York. *See* Plaintiff's Complaint, ¶¶ 1, 10-24. BLJ is described as a wholesaler-distributor located in Carson City, Nevada that distributes Bryco's handguns. *Id.* at ¶ 4. The Complaint alleges that the gun used by the shooter was manufactured by Bryco and distributed through several of the Defendants with BLJ being only one link in the chain.

*Id.* at ¶¶ 1,2. The Plaintiff alleges the chain of custody of the gun was as follows:

> "the gun was manufactured at the Bryco Arms plant located in Costa Mesa, California, sold by B.L. Jennings Inc. in Nevada to AcuSport Corporation, a wholesale distributor, which sold the gun to Atlantic Gun and Tackle, Inc. in Bedford Heights, Ohio. The gun was then sold by Atlantic Gun and Tackle to a straw purchaser, Angela Freeman, an individual and resident of Cleveland, Ohio . . . and who it is believed, purchased the gun for her friend and then husband, Bernard Gardier. Bernard Gardier and Jamal Gales brought the gun to New York City where they sold it to for $250.00. The gun was sold two more times in the underground illegal handgun market until it was purchased by John Taylor, the shooter of the plaintiff's daughter, Anita Smith." *Id.* at ¶ 2; *See also*, ¶¶ 68-72.

In support of the Plaintiff's claim for negligence, the Complaint lists many broad, irrelevant, and incorrect statements about the Jennings family members and the corporate Defendants listed in this case. *Id.* at ¶¶ 30-44, 47-53. Without regard for the prima facia elements of a negligence claim, the Plaintiff goes on a tirade alleging that the Jennings family members control the corporate Defendants, that the corporations are shams or merely alter egos, that the family furthers their personal interests through the corporate Defendants, and that the corporations are not adhering to the Bureau of Alcohol, Tobacco, and Firearms' ("BATF") requests and procedures. *Id.* The Plaintiff continues with allegations that the handguns manufactured by the Defendants were designed poorly, inexpensive, and had design defects. *Id.* at ¶ 45. None of these statements are supported by facts and they are all completely irrelevant to the claim for negligence which is asserted against BLJ.

Regardless of the extensive amount of scurrilous accusations included in the Complaint, the Plaintiff's failed to plead the basic facts necessary to prove the elements of negligence.

## ARGUMENT

**Plaintiff, Joan Truman Smith Has Failed To Plead The Facts Required For A Negligence Claim Therefore "The First Cause Of Action – Negligence" Should Be Dismissed As A Matter Of Law.**

    **A.    The Prima Facie Elements Of A General Negligence Claim Under New York State Law.**

Under New York Law, the Plaintiff must establish the following elements in order to prove a claim for negligence: 1) that the defendant owed the plaintiff a duty of care, 2) that the defendant breached this duty by engaging in conduct posing an unreasonable risk of harm, and 3) that the defendant's breach proximately resulted in damage to the plaintiff. *Hamilton v. Accu-Tek*, 62 F.Supp.2d 802, 818 (E.D.N.Y. 1999)(*citing Akins v. City School District*, 53 N.Y.2d 325, 333, 424 N.E.2d 531, 535, 441 N.Y.S.2d 644, 648 (1981); *Febesh v. Elcejay Inn Corp.*, 157 A.D. 2d 102, 104, 555 N.Y.S.2d 46, 47 (1990)).

        **1.    Duty.**

The definition of a duty of care by one member of society to another is determined by the court. *Hamilton*, 62 F.Supp.2d at 818 (*citing Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585, 634 N.E.2d 189, 192, 611 N.Y.S.2d 817, 820 (1994); *Waters v. New York City Housing Auth.*, 69 N.Y.2d 225, 229, 505 N.E.2d 922, 923, 513 N.Y.S.2d 356, 358 (1987)). There is typically no need for a court to undertake a detailed analysis of precedent and policy as a general duty to avoid negligence is assumed in the usual run of cases. *Hamilton*, 62 F.Supp.2d at 818 (*citing Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 469 (2nd Cir. 1995)). However, where "a defendant's negligence inheres not in its own acts, but in its failure to anticipate the tortious or criminal acts of others, judicial consideration of the existence of a duty is warranted." *Hamilton*, 62 F.Supp.2d at 818 (*citing* Restatement (Third) of Torts: General Principles § 6 cmts. c, d (Discussion Draft April 5, 1999)).

The New York Court of Appeals has repeatedly emphasized

> "while moral and logical judgments are significant components of the analysis, we are also bound to consider the larger social consequences of our decisions and to tailor our notion of duty so that 'the legal consequences of wrongs [are limited] to a controllable degree.'" *Hamilton*, 62 F.Supp.2d at 819 (*citing Waters*, 505 N.E.2d at 923-24, *quoting Tobin v. Grossman*, 24 N.Y.2d 609, 619, 301 N.Y.S.2d 554, 249 N.E.2d 419)).

New York Courts are generally "reluctant to impose a duty to anticipate the criminal or tortious conduct of a third party." *Hamilton*, 62 F.Supp.2d at 819 (*citing Purdy v. Public Adm'r of Westchester City*, 72 N.Y.2d 1, 8, 526 N.E.2d 4, 7, 530 N.Y.S.2d 513, 516 (1988); *Pulka v. Edelman*, 40 N.Y.2d 781, 785-86, 358 N.E.2d 1019, 1022, 390 N.Y.S.2d 393, 396-97 (1976)).

In the case *sub judice*, the duty alleged would force BLJ to anticipate the criminal or tortious conduct of a third party several links down the chain of custody from manufacture to final possession. Therefore, the Court must review all applicable case law and determine if, in fact, a duty existed on the part of BLJ. After a review of New York state law on this issue, the Court will find that there was no such duty and the negligence claim should be dismissed.

### 2. Proximate Cause.

Ordinarily, the issue of proximate cause is decided by the finder of fact. *Hamilton*, 62 F.Supp.2d at 833. However, in some instances, there is a basis for a determination by the court that the causal connection between defendant's negligence and plaintiff's injury should be deemed severed as a matter of legal policy. *Id*. To satisfy the proximate cause element under New York law, a plaintiff must establish that the defendant's negligence was a substantial foreseeable factor in bringing about his or her injury. *Id*. (*citing Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 520, 429 N.Y.S.2d 606, 614, 407 N.E.2d 451, 459 (1980); *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315, 414 N.E.2d 666, 670, 434 N.Y.S.2d 166, 170 (1980); Restatement (Second) of Torts § 431 (1965)). "The term 'proximate cause' includes both the concept of 'actual' or 'in-fact' causation and

the requirement that a defendant's liability be limited to injuries which foreseeably flow from its conduct." *Id*.

In reference to the case before this court, BLJ could not foresee the events the Plaintiff alleges took place, therefore, the negligence claim should be dismissed as a matter of law.

> **B.  New York State Law Does Not Recognize A Duty Between The Manufacturers Of Handguns And The Victims Or Survivors Of Victims Involved In Violent Crimes Using Handguns.**

As prescribed above, in order for the Plaintiff to substantiate a claim for negligence against BLJ, she is required to first prove that BLJ, as a distributor of handguns, owed a duty to her and her daughter.  The Plaintiff will not be able to properly satisfy this element and will be precluded from moving on to the other elements of the negligence claim.

In *Hamilton v. Beretta*, 222 F.3d 36 (2nd Cir. 2000), after reviewing a case of first impression, the Second Circuit certified to the Court of Appeals of New York the question of "whether the defendants [handgun manufacturers] owed plaintiffs a duty to exercise reasonable care in the marketing and distribution of the handguns they manufacture?"  *Id.* at 39.  The Court of Appeals of New York answered the question in the negative.  *Hamilton v. Beretta*, 96 N.Y.2d 222, 231, 750 N.E.2d 1055, 1059, 727 N.Y.S.2d 7, 11 (2001).  The Second Circuit affirmed this decision at *Hamilton v. Beretta*, 264 F.3d 21 (2nd Cir. 2001).  As the facts of the *Hamilton Case* are almost identical to those before this Court, it is important to explore them in detail.

In *Hamilton*, the relatives of people killed by handguns sued the handgun manufacturers in federal court alleging negligent marketing, design defect, ultra-hazardous activity, and fraud. *Hamilton*, 96 N.Y.2d at 229.  The product liability and fraud claims were dismissed on a motion for summary judgment.  *Id*.  After a four week jury trial, 15 of the remaining 25 defendants were found to have failed to use reasonable care in the distribution of their guns.  *Id.* at 230.  Nine of the 15 were

5

found to have proximately caused the deaths of the decedents of two plaintiffs. *Id*. Only three defendants were forced to pay damages. *Id*. Those three defendants appealed resulting in the Second Circuit's certification of the question of duty to the Court of Appeals of New York. During that hearing, the plaintiffs argued that the defendants had

> "a duty to exercise reasonable care in the marketing and distribution of their guns based upon four factors: (1) defendants' ability to exercise control over the marketing and distribution of their guns, (2) defendants' general knowledge that large numbers of their guns enter the illegal market and are used in crime, (3) New York's policy of strict regulation of firearms and (4) the uniquely lethal nature of defendants' products.
> According to plaintiffs, handguns move into the underground market in New York through several well-known and documented means including straw purchases . . . , sales at guns shows, misuses of Federal firearms licenses and sales by non-stocking dealers (i.e., those operating informal businesses without a retail storefront). Plaintiffs further assert that gun manufacturers have oversaturated markets in states with weak gun control laws (primarily in the Southeast), knowing those 'excess guns' will make their way into the hands of criminals in states with stricter laws such as New York, thus 'profiting' from indiscriminate sales in weak gun states. Plaintiffs contend that defendants control their distributors' conduct with respect to pricing, advertising and display, yet refuse to institute practices such as requiring distribution contracts that limit sales to stocking gun dealers, training salespeople in safe sales practices (including how to recognize straw purchasers), establishing electronic monitoring of their products, limiting the number of distributors, limiting multiple purchases and franchising their retail outlets." *Id.* at 231.

The Court of Appeals of New York unanimously decided that there was no duty on the part of the manufacturers. The Court

> "began by emphasizing that the foreseeability of harm, standing alone, does not define the duty of care but 'merely determines the scope of the duty once it is determined to exist.' [citations omitted] Contrary to the district court's reasoning, the Court of Appeals found that defendants' relationships with their dealers and distributors did not 'place the defendants in the best position to protect against the risk of harm,' given the 'very large' pool of potential plaintiffs and the 'remote' connection between defendants, the criminal

6

>wrongdoers, and plaintiffs. [citation omitted] *Hamilton* 264 F.3d at 28.

The Court explored that the chain of possession of a handgun could run through the manufacturer, the federally licensed distributor or wholesaler, the first retailer, and, most often, would include numerous subsequent legal purchasers or even a thievery. *Hamilton*, 96 N.Y.2d at 234. The Court summarized their opinion by stating that "such broad liability, potentially encompassing all gunshot crime victims, should not be imposed without a more tangible showing that defendants were a direct link in the causal chain that resulted in plaintiffs' injuries, and that defendants were realistically in a position to prevent the wrongs." *Id.* Finally, the Court stated that "the plaintiffs did not present any evidence tending to show to what degree their risk of injury was enhanced by the presence of negligently marketed and distributed guns, as opposed to the risk presented by all guns in society." *Id*. at 235.

In addition, the plaintiffs and the District Court in *Hamilton* attempted to use the negligent entrustment doctrine to impose a duty of care on the defendants. *Id*. at 236. They claimed that "the owner or possessor of a dangerous instrument is under a duty to entrust it to a responsible person whose use does not create an unreasonable risk of harm to others and that the duty extends through successive, reasonably anticipated entrustees." *Id*. at 236-37. Again, the Court of Appeals of New York denied the duty of care and stated that the "negligent entrustment doctrine might well support the extension of a duty to manufacturers to avoid selling to certain distributors in circumstances where the manufacturer knows or has reason to know those distributors are engaging in substantial sales of guns into the gun-trafficking market on a consistent basis . . . however, the plaintiffs did not present such evidence." *Id*. at 237.

The Plaintiff, in this case *sub judice,* is attempting to make an identical argument to the one already heard and denied in two federal courts and the highest state court in New York.

    **C.**    **In Light Of *Hamilton*, Plaintiff Smith Has Failed To State A Claim Upon Which Relief Can Be Granted Because BLJ Did Not Owe Her A Duty Under New York State Law And There Was No Proximate Cause Between Plaintiff's Injuries and BLJ's Actions.**

Plaintiff Smith alleges that BLJ was negligent in its distribution of the handgun which was eventually used to kill her daughter. *See* Plaintiff's Complaint at ¶¶ 1, 2. This is the exact same claim that the plaintiffs in *Hamilton* unsuccessfully argued against the manufacturers.[1] In order to support this allegation, Plaintiff Smith must prove that a duty existed between BLJ and her and her daughter. With *Hamilton* as precedent, the Court will not assume a duty existed unless evidence is produced to prove such. As developed in the litany of *Hamilton* cases, the Plaintiff has to show that the defendant was a direct and knowledgeable link in the causal chain that resulted in Plaintiff's injuries and that BLJ was realistically situated to be the best entity to prevent the wrong. *Hamilton*, 96 N.Y.2d at 233-35.

The Plaintiff has failed to allege the facts necessary to prove this duty in her Complaint. The second clause of the Plaintiff's Complaint specifically proves the opposite. BLJ was the second entity to possess the handgun which was allegedly used to kill the Plaintiff's daughter. *See* Plaintiff's Complaint at ¶ 2. The handgun was subsequently sold to AcuSport, Atlantic Gun and Tackle, and, thereafter, Angela Freeman. *Id*. The Plaintiff alleges that Freeman never intended to keep the gun but has not plead specific facts to show how Atlantic Gun and Tackle, let alone a distributor as far back as BLJ, was supposed to know that fact. Freeman's boyfriend, an individual

---

[1] The Court of Appeals' decision in *Hamilton* is in accordance with other jurisdictions which have considered the negligent marketing issue. *See also*, *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F.Supp.2d 882 (E.D.Pa. 2000), *aff'd* 277 F.3d 415 (3rd Cir. 2002); *Camden Co. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F.Supp.2d 245 (D.N.J. 2000), *aff'd* 273 F.3d 536 (3rd Cir. 2001); *Armijo v. Ex Cam*, 843 F.2d 406 (10th Cir. 1998), *aff'd* 656 F.Supp 771; *First Commercial Trust Co. v. Colt's Mfg.Co.*, 77 F.3d 1081 (8th Cir. 1996); *Shipman v. Jennings Firearms*, 791 F.2d 1532 (11th Cir. 1986).

unforeseeable to the licensed distributors, allegedly took the gun to New York City and it changed hands at least three more times. *Id*. The gun was eventually purchased by John Taylor, the individual who shot the Plaintiff's daughter and, again, an individual wholly unforeseeable to the distributors. As with the defendants in *Hamilton*, BLJ was too remote from the situation to have reasonable control over who ended up with the handgun after this lengthy succession of sales. BLJ was not the party best situated to protect the Plaintiffs against the risk of harm and can not be obliged to owe a duty which would include controlling the criminal acts of third parties four or five links down the chain of custody. *Hamilton*, 96 N.Y.2d at 233-35.

In order for the Plaintiff to use the negligent entrustment doctrine to create a duty, the *Hamilton* Court stated that she would have to prove that BLJ knew or had reason to know that the distributor that it was selling the gun to was engaging in substantial sales of guns into the gun-trafficking market on a consistent basis. *Id*. at 237. The Plaintiff did not plead the specific facts necessary to substantiate that duty or any duty under New York tort law. Therefore, the negligence claim should be dismissed.

However, while it is "black-letter law in New York that a plaintiff cannot recover on a negligence claim absent some duty of care owed by the defendant to the plaintiff," it is important for the Court to notice that the Plaintiff in this case did not plead facts sufficient to satisfy the proximity element of negligence either. *Hamilton*, 264 F.3d at 30. In order for the Plaintiff to prove proximate cause, she must show a "substantial foreseeable factor in bringing about her injury." *Hamilton*, 62 F.Supp.2d at 833. As is stated in the Complaint, BLJ sold the handgun to AcuSport which was a licensed distributor in the State of Ohio. *See* Plaintiff's Complaint, ¶¶2, 25. There was absolutely no feasible way that BLJ could have known that the handgun would end up in the hands of a criminal in New York City. BLJ had no control over the possession of the handgun after it was sold to

9

AcuSport and was too far removed, after multiple changing of hands including a thievery, to prohibit that possession from taking place. As the Plaintiff did not allege facts to substantiate BLJ's foreseeability of the Plaintiff's injury thus supporting proximate cause, the negligence claim should be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant, B.L. Jennings respectfully requests that this Court grant its Motion to Dismiss "The First Cause of Action – Negligence" for Failure to State a Claim Upon Which Relief Can Be Granted.

Dated: New York, New York
July15, 2002

>  _____
>  Robert E. Scott, Jr. (RES 9592)
>  Brittany L. Roberts (BLR 4744)
>  Semmes, Bowen & Semmes
>  250 W. Pratt Street
>  Baltimore, MD 21201
>  (410) 539-5040
>
>  and
>
>  Brian Heermance (BPH 6805)
>  Morrison, Mahoney & Miller, LLP
>  100 Maiden Lane - 22nd Floor
>  New York, NY 10038
>
>  Attorneys for Defendant B.L. Jennings, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of July, 2002, a copy of the foregoing Defendants' Memorandum of Law in Support of Its Motion to Dismiss "The First Cause of Action – Negligence" for Failure to State a Claim Upon Which Relief Can Be Granted was faxed and mailed, first-class, postage prepaid, to: Elisa Barnes, 111 Broadway, 4th Floor, New York City, New York 10006, Attorney for Plaintiff.

_____
Robert E. Scott, Jr.

B0274234.WPD

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOAN TRUMAN SMITH | CIVIL ACTION NO: CV 02 3029 (JBW) |
| V. | |
| BRYCO ARMS, Inc., et al. | Honorable Jack B. Weinstein |

### ORDER

Upon consideration of Defendant, B.L. Jennings, Inc.'s Motion to Dismiss "The First Cause of Action – Negligence" for Failure to State a Claim Upon Which Relief Can Be Granted, the accompanying Memorandum of Law, and any Oppositions filed thereto, it is this _____ day of _____, 2002, hereby,

**ORDERED**, that Defendant, B.L. Jennings, Inc.'s Motion to Dismiss "The First Cause of Action – Negligence" for Failure to State a Claim Upon Which Relief Can Be Granted is **GRANTED**.

_____
JUDGE JACK B. WEINSTEIN