## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**JOAN TRUMAN SMITH**

**CIVIL ACTION NO:**

**V.**                                                         **CV 02 3029 (JBW)**

**BRYCO ARMS, Inc., et al.**                          **Honorable Jack B. Weinstein**


### DEFENDANTS, BRUCE JENNINGS AND JENNINGS FIREARMS, INC. OF NEVADA, MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR INSUFFICIENCY OF SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION

Defendants, Bruce Jennings and Jennings Firearms, Inc. of Nevada, ("JFI"), by and through its undersigned attorneys, hereby submit its Memorandum of Law in Support of Its Motion to Dismiss, pursuant to the Federal Rules of Civil Procedure 12(b)(2) and (5), on the grounds of insufficiency of service of process and lack of personal jurisdiction, and in support state:

### I.  Statement Of Facts

This suit was recently filed by Plaintiffs alleging negligence and public nuisance against various defendants, including Bruce Jennings, all the members of the Jennings family, Bryco Arms, Inc., and B. L. Jennings, Inc. ("BLJ"), among others, related to a shooting that occurred on May 25, 2000.  *See* Complaint, ¶¶1, 10-24.

At approximately 9:30 a.m. on June 24, 2002, a private process server attempted to serve BLJ, with three (3) sets of summonses, one for BLJ, one for Bruce Jennings, Individually; and one for JFI at the office of BLJ located in Carson City, Nevada by personally serving Chris Larsen, President of BLJ.  *See Affidavit of Chris Larsen*, attached hereto as Exhibit 1, ¶¶1-2.  Mr. Larsen specifically informed the private process server that he was authorized to accept the summons for BLJ, but that he would not and could not accept service for Bruce Jennings, Individually, or JFI.  *Id.*, ¶¶2-3;  *See Affidavit of Bruce Jennings*, attached hereto as Exhibit 2, ¶4.  Upon being advised of

these statements, the private process server called his office and asked what he should do with the remaining two (2) sets of documents.  Ex. 1, ¶2; Ex. 2, ¶4.  Mr. Larsen could hear the person on the other end of the telephone say to leave all of the papers and to mark them on his service sheet as served.  Mr. Larsen again informed the gentleman that he would not accept service for Bruce Jennings and JFI but, apparently disregarding Mr. Larsen's repeated protestations, the process server proceeded to leave all of the documents on the desk and rushed out of the office.  Ex. 1, ¶¶2-3; Ex. 2, ¶4.  Mr. Larsen called to the process server, and asked his name and the name of the company that he worked for, although the process server only responded by saying to "call my lawyer".  Ex. 1, ¶2.

JFI is a corporation that is not capable of being subject to service as it no longer exists.  JFI was originally incorporated on November 15, 1985. In November 15, 1992, JFI changed its name to BLJ and JFI ceased to exist.  BLJ is an active company, organized and authorized to conduct business under the laws of Nevada, with its principal place of business in Carson City, Nevada.  BLJ is certified in good standing by the Nevada Department of Corporations. Ex. 1, ¶6, ex.1- 3; Ex.2, ¶2, ex. 1-2.  The corporate purpose of Jennings Firearms, Inc., and then BLJ, was as a distributor of firearms.  Ex. 2, ¶2.

As to Bruce Jennings, he served as the President of BLJ from approximately 1986 to August 6, 1999 when he resigned as President and Director.  Ex. 1,¶4; Ex. 2, ¶3. Bruce Jennings does not currently hold any position at BLJ either as an officer or director, although he has been the sole shareholder of BLJ since its incorporation in 1985.  Ex. 1,¶4; Ex. 2, ¶3. Bruce Jennings is currently employed by BLJ to assist in the defense of litigation against the company.  Ex. 1,¶5; Ex. 2, ¶3. Chris Larsen has never been given permission by Bruce Jennings to act on behalf of Bruce Jennings

in his personal capacity in any manner and, therefore, Mr. Larsen is not, nor was he ever, authorized to accept service of the summons in this case on Bruce Jennings. Ex. 1, ¶; Ex. 2, ¶4.[1]

Regarding contacts with the state of New York by JFI to satisfy personal jurisdiction by this Court, JFI is a corporation that ceased to exist in 1992. Ex. 1, ¶6; Ex. 2, ¶2. It was not in existence at the time of the shooting at issue, nor was it in existence when the related firearm allegedly used in the shooting was manufactured and distributed. *See Complaint*, ¶1; Ex. 1, ¶6. Therefore, it is not possible for JFI to have established any contacts with New York to be subject to personal jurisdiction.

As for Bruce Jennings, he stepped down as President of BLJ in August, 1999 and was, therefore, not in a position as a corporate officer or director of BLJ when the handgun at issue in this case was manufactured or distributed. Ex. 1, ¶4; Ex. 2, ¶3. He has never engaged in the firearms business in his personal capacity in any manner or at any time. Ex. 2, ¶3. Furthermore, he has never owned, rented or leased any property in the State of New York. He has also never owned any assets in the State of New York nor has he ever transacted or conducted any business in the State of New York. He has never had a checking or banking account in a bank in the State of New York nor has he ever worked in the State of New York. He has had no personal contact whatsoever with the State of New York. Ex. 2, ¶5.

---

[1]      In *NAACP v. A. A. Arms, Inc., et al.*, Case No. 99 CV 3999(JBW), currently pending before this court, the issue of insufficiency of service of process, pursuant to Fed. R. Civ. P. 12(b)(5), was raised in a Motion to Dismiss, filed on or about February 23, 2000, when the plaintiff attempted to serve Bruce Jennings in his individual capacity as a defendant to the case. This motion was withdrawn, on or about March 28, 2000, when it was discovered that Chris Larsen had mistakenly told the process server that he thought that he had authority to accept service on behalf of Bruce Jennings individually. In light of this apparent misunderstanding by Chris Larsen, he is fully aware that he does not have the authority to accept service on behalf of Bruce Jennings nor anyone else and conveyed this lack of authority to the process server in this action.

As JFI and Bruce Jennings have no contacts with New York in any manner, there is no basis for personal jurisdiction by this Court over either defendant.

## II.     Insufficiency of Service of Process

Fed. R. Civ. P. 4(e)(2) authorizes service on an individual "by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." Service of the Summons and Complaint on Bruce Jennings was attempted at BLJ by serving Chris Larsen, an individual who was not his agent nor was authorized to accept service on behalf of Bruce Jennings, as was clearly indicated by Mr. Larsen to the process server. Ex. 1,¶2 ;Ex. 2,¶4. Moreover, it is irrelevant that Bruce Jennings is an employee and shareholder of BLJ, as the plaintiff was attempting to serve him individually and not as a corporate representative of BLJ. Thus, service was not effective on Bruce Jennings in compliance with Fed. R. Civ. P. 4(e).

Likewise, Fed. R. Civ. P. 4(h)(2) permits service upon a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Plaintiffs attempted to serve JFI in this case by serving the Summons and Complaint for JFI on Chris Larsen. Chris Larsen has never been employed by JFI as an officer, director, manager, or employee and he has never been authorized by appointment or by law to receive service of process for JFI. Ex. 1, ¶7. His lack of authority to accept service for JFI was explained to the process server. *Id.*, ¶2.

In serving a corporation, the general rule "is that the person upon which a summons and a complaint are served must have some measure of discretion in operating some phase of the defendant's business or in the management of a given office." *Baade v. Price*, 175 F.R.D. 403, 405 (D.C. 1997). It is without dispute that Chris Larsen had no involvement in any capacity with JFI or authority to act on its behalf in accepting service or otherwise. Ex. 1, ¶¶2,7.

Additionally, JFI ceased to exist in 1992 when it changed its name to BLJ and Chris Larsen did not become affiliated or involved with BLJ until the following year in 1993. Ex. 1, ¶¶1,6. Therefore, JFI is not a corporation capable of being subject to service of process and dismissal is appropriate. *See Dahl v. Kanawha Inv. Holding Co.*, 161 F.R.D. 673, 681 (N.D. Iowa 1995)(the court may dismiss for improper service where further attempts at proper service would be futile); *See Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983)(the court has discretion to dismiss if it is not likely that proper service can be accomplished).

Strict compliance with Federal Rule of Civil Procedure 4 is required. *R. Griggs Group Ltd. v. Filanto Spa*, 920 F.Supp 1100, 1103 (Nev. 1996). Once service is challenged, the plaintiff bears the burden proving that service was properly effected under Fed. R. Civ. P. 4. *Berk v. The City of New York*, 2001 U.S. Dist. Lexis 13738, 9 (S.D.N.Y. 2001). If service of process is not shown to be effected in accordance with Fed. R. Civ. P. 4, dismissal may be proper under Fed. R. Civ. P. 12(b)(5). Moreover, the formal requirements of Rule 4 must be meet regardless of whether or not the defendant has actual notice of the lawsuit. *Baade,* 175 F.R.D. at 405, *citing Adams v. Allied Signal General Aviation Avionics*, 74 F.3d 882, 885 (8th Cir, 1996). Because Chris Larsen did not have authority to accept service of the summons and complaint on behalf of JFI or Bruce Jennings, service is improper.

### III.   Lack Of Personal Jurisdiction

####    A.   The Burden Of Proving That This Court Has Personal Jurisdiction Over JFI And Bruce Jennings Lies With The Plaintiffs

This action has been filed by the Plaintiffs based upon proper venue and jurisdiction pursuant to 28 U.S.C. §1391, for business contacts with the state of New York, and 28 U.S.C. §1332, for diversity of citizenship. *See Complaint*, ¶¶7,8. "The amenability of a foreign corporation to suit in

federal court in a diversity action is determined in accordance with the law of the state where the court sits", and accordingly, the application of New York state law to the instant case is appropriate. *Ball v. Metallurgie Hoboker-Overpelt, S.A.*, 902 F.2d 194, 198 (1990), *citing Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d. Cir. 1963)(*in banc*); *Hamilton v. Accu-tek*, 32 F. Supp. 2d. 47, 54-55 (1998)("*Hamilton I*"). It is the plaintiffs' burden to establish jurisdiction by a preponderance of the evidence. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd. 763 F.2d 55* (2d. Cir. 1985). The nature of the plaintiff's obligation varies depending on the procedural posture of the litigation. . . "only a *prima facie* showing is necessary to defeat a jurisdiction testing motion before discovery" *Ball*, 902 F.2d at 196.

In determining whether personal jurisdiction exists in this diversity action, the court will inquire whether JFI and Bruce Jennings are subject to service of process under the New York long-arm statute, specifically C.P.L.R.§302(a), and whether the jurisdiction is in accordance with the constitutional requirements of federal due process. *Hamilton I* at 55; *Savin v. Ranier,* 898 F.2d 304, 306 (2d Cir. 1990); *See Ball*, 902 F.2d at 198.

> **B.      There Is No Basis For Personal Jurisdiction By This Court**
> **Under The New York Long-Arm Statute**

To assert jurisdiction in this action under C.P.L.R. §302(a)(3) of the New York long-arm statute, the Plaintiffs must prove that JFI and/or Bruce Jennings:

> committed a tortious act outside New York which caused injury to person or property inside New York and the defendant (i) regularly conducts or solicit business in New York or derives substantial revenue from goods used or services and goods sold in New York, or (ii) the defendant reasonably expects the act to have consequences in New York and to derive substantial revenue from interstate commerce.

*Cortland Racquet Club, Inc. v. Oy Saunatec, Ltd.*, 978 F. Supp. 520, 523 (1997). *See Hamilton I* at 55; *Schaadt v. T.W. Kutter, Inc.*, 169 A.D.2d 969, 969, 564 N.Y.S.2d 865, 866 (1991). Under

C.P.L.R. §302(a)(ii), known as the "foreseeability requirement", "there must be an affirmative or purposeful act invoking the benefits or protection of New York law." *Hamilton I* at 56; *Schaadt*, 169 A.D. at 970, 564 N.Y.S.2d at 866; *Cortland*, 978 F. Supp. at 523. "In other words, mere foreseeability of in-state consequence and failure to avert that consequence is not sufficient to establish personal jurisdiction under New York's long-arm statute." *Cortland*, 978 F. Supp. at 523; *See Schaadt*, 169 A.D.2d at 969; *See World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 62 L.Ed. 2d 490, 100 S. Ct. 559 (1980). "The test of whether a defendant expects or should reasonably expect his act to have consequence within the State is an objective, rather than subjective one". *Cortland*, 978 F. Supp. at 523.

The facts in this matter do not support that JFI or Bruce Jennings have committed an act or engaged in conduct to be subject to jurisdiction under C.P.L.R. §302(a)(i) or (ii). JFI is a corporation that ceased to exist in 1992, several years before the handgun at issue in this case was manufactured and sold. JFI could not conduct business in New York as it was not a viable corporation at the time of the shooting. Ex.1, ¶6; Ex. 2,¶2. Similarly, Bruce Jennings did not engage in conduct that would subject him to jurisdiction under New York's long arm statute. He has never transacted or conducted business in the State of New York, nor has he had any personal contact with New York for any reason. Ex. 2, ¶5. He resigned as President of BLJ in 1999, almost one year before the subject shooting took place. Ex. 2,¶3 .

Plaintiffs have made no allegations that these defendants have committed any specific acts to subject them to jurisdiction in New York or, even simply, that the handgun recovered in New York from the shooting can be connected in any manner to JFI or Bruce Jennings personally. The Plaintiffs' claims are based on a loosely-bound theory that a handgun legally distributed and sold in Ohio, which was then sold in the illegal, underground market in New York **on several occasions**,

which resulted in a shooting New York, must be connected to these defendants since they were somehow, at sometime, engaged in the business of providing handguns through legal channels of commerce.  Such bald claims, with no supporting evidence, do not rise to a "purposeful act invoking the benefits of New York law" to satisfy C.P.L.R. §302(a)(i) or (ii) .  *See Hamilton I* at 55-56.

**C.     JFI and Bruce Jennings Have Not Committed
A Tort Outside Of New York**

C.P.L.R. §302(a)(3)(i) and (ii) permit jurisdiction over a defendant that commits a tortious act outside the state of New York.  However, as the Second Circuit indicated, "the plaintiff must aver facts that if credited, would suffice to establish *all the requirements* under one of §302a's subsections, including the commission of a tort."*Banks Brussel Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 785 (2d. Cir. 1999)(emphasis added).

Again, plaintiffs do not specifically allege any facts that JFI or Bruce Jennings committed a tortious act, either in the state of New York or outside the state.   In fact, any allegation of  activity by all defendants seems to stop in Ohio with the legal sale of the subject firearm to Angela Freeman, who is interestingly not named as a defendant in this case.  See Complaint, ¶2.  Specifically, none of the allegations in paragraph 2, nor in the complaint, identify that the manufacturing, distributing and/or selling of the handgun at issue was done illegally or improperly by JFI or Bruce Jennings, nor that they engaged in any type of tortious activity, or derived revenue from such acts, which would subject them to New York long arm jurisdiction.  Accordingly, the long-arm statute does not confer personal jurisdiction over JFI or Bruce Jennings.

**IV.     As JFI and Bruce Jennings Have No Contacts With New York, An Exercise Of
Jurisdiction By This Court Would Violate Federal Due Process.**

Assuming *arguendo* that jurisdiction by this Court over the defendants is found to be appropriate under the New York long-arm statute, it would be a violation of due process to keep JFI and Bruce Jennings in this action as there is no evidence of contacts sufficient to satisfy jurisdiction in New York.  "The due process determination involves the assessment first as to whether the defendant has sufficient contacts with the forum state to justify the exercise of personal jurisdiction, and second, as to whether the assertion of jurisdiction is reasonable under the circumstances and "comports with the 'traditional notions of fair play and substantial justice'".  *Hamilton I*, 32 F. Supp. 2d. at 57 (citations omitted).

The factual arguments raised above regarding the lack of evidence of the JFI and Bruce Jennings' activities to establish personal jurisdiction under the long-arm statute apply equally to this due process analysis.  There is no evidence to establish that either defendant has committed a negligent act in or out of the state of New York, that they derives substantial revenue from products, or that they took any act to purposefully avail it of the benefits of New York.

To establish minimum contacts, the plaintiff must show that "'specific' jurisdiction exists through a showing that plaintiff's claims arise from or are related to a defendant's activities in the forum."  *Hamilton I*, Id; *See Philip Morris*, 86 F. Supp. 2d at 94.  The minimum contacts analysis is 'fact-intensive'".  *Hamilton I*, Id. at 59, n.7.  If the plaintiffs' factual evidence in support of a "minimum contacts" argument is weak, the defendant's threshold for establishing unreasonableness to defeat jurisdiction is lessened.  *Philip Morris*, 86 F. Supp. 2d at 96.  In the instant action, there is no allegation or evidence that rises to the specific proof required of the plaintiffs to establish jurisdiction over JFI and Bruce Jennings under the minimum contacts test.

Moreover, if JFI or Bruce Jennings would be subject to this Court's jurisdiction, it would offend the "traditional notions of fair play and substantial justice" and would be unreasonable under

the circumstances of this particular case.  *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d. Cir. 1996)(citations omitted).  In conducting a "reasonableness inquiry", the Court will consider five factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.*; *Hamilton I*, 32 F. Supp. 2d at 59.

Bruce Jennings is employed by BLJ located in Nevada, not in New York, or in any other state for that matter. Ex. 2, ¶2-3.  Bruce Jennings is a resident of the State of Florida.  *Id.*, ¶1.  It would be burdensome, inconvenient and unreasonable for Bruce Jennings to defend himself in New York, when he resides in Florida and is employed on the other side of the country.  JFI does not exist so it would certainly be inefficient and uneffective, and virtually impossible, for it to properly defend itself.  Furthermore, the lack of any solid allegations advanced by the plaintiffs, including the absence of minimum contacts, to link the defendants to any of the allegations of negligence and public nuisance violates "fair play and substantial justice, warranting that this Court dismiss JFI and Bruce Jennings from this action.

## V.    Conclusion

For the foregoing reasons, this Court lacks personal jurisdiction over JFI and Bruce Jennings under New York law and an exercise of jurisdiction over JFI and Bruce Jennings would violate due process. Additionally, there is a lack of sufficiency of service of process on JFI and Bruce Jennings. Accordingly, JFI and Bruce Jennings respectfully requests that this Court grant JFI and Bruce Jennings' Motion to Dismiss and Memorandum of Law in Support of Its Motion to Dismiss for

Insufficiency of Service of Process and Lack of Personal Jurisdiction, and for such further relief as

this Court may deem proper and necessary.

Dated: New York, New York
           July_____, 2002


                                       _____
                                       Robert E.  Scott, Jr. (RES 9592)
                                       Brittany L. Roberts (BLR 4744)
                                       Semmes, Bowen & Semmes
                                       250 W. Pratt Street
                                       Baltimore, MD 21201
                                       (410) 539-5040

                                       and

                                       Brian Heermance (BPH 6805)
                                       Morrison, Mahoney & Miller, LLP
                                       100 Maiden Lane - 22nd Floor
                                       New York, NY 10038

                                       Attorneys for Defendants,
                                       Bruce Jennings and Jennings Firearms, Inc. of
                                       Nevada

### CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this _____ day of July, 2002, a copy of Defendants, Bruce

Jennings and Jennings Firearms, Inc. of Nevada,  Memorandum of Law in Support of Its Motion to

Dismiss for Insufficiency of Service of Process and Lack of Personal Jurisdiction  was faxed and

mailed, first-class, postage prepaid, to Elisa Barnes, 111 Broadway, 4th Floor, New York City, New

York 10006, Attorney for Plaintiff.


                                       _____
B0273230.WPD 20147-17                           Robert E.  Scott, Jr.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

JOAN TRUMAN SMITH                          CIVIL ACTION NO:
                                           CV 02 3029 (JBW)
V.

                                           Honorable Jack B. Weinstein
BRYCO ARMS, Inc., et al.


**ORDER**

    Upon consideration of Defendants, Bruce Jennings and Jennings Firearms, Inc. of Nevada's

Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process, and any

Oppositions filed thereto, it is this _____ day of _____, 2002, hereby,

    **ORDERED**, that Defendants, Bruce Jennings and Jennings Firearms, Inc. of Nevada's

Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process is

**GRANTED**.


_____
JUDGE JACK B. WEINSTEIN