## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**JOAN TRUMAN SMITH**                              **CIVIL ACTION NO:**
                                                   **CV 02 3029 (JBW)**
**V.**

                                                   **Honorable Jack B. Weinstein**

**BRYCO ARMS, Inc., et al.**

## DEFENDANT RHONDA JENNINGS' NOTICE OF MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

PLEASE TAKE NOTICE that, upon the annexed Memorandum of Law in Support of her

Motion to Dismiss for Lack of Personal Jurisdiction, and Affidavit of Rhonda Jennings, together

with the attached exhibits, and all prior pleadings and proceedings had herein, Defendant Rhonda

Jennings will move this Court, oral argument requested, before the Honorable Jack B. Weinstein,

United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York, 11201, on a date specified

by the Court, for an order pursuant to Rule 12(b) of the Federal Rules of Civil Procedure dismissing

Plaintiff's claims as against Defendant Rhonda Jennings for lack of personal jurisdiction.

Dated: New York, New York
       October 2nd, 2002

                              Respectfully submitted,

                              *Robert E. Scott Jr.*

                              Robert E. Scott, Jr. (RS 9592)
                              Lauren E. Lacey (LL2999)
                              Brittany L. Roberts (BR 4744)
                              Semmes, Bowen & Semmes
                              250 W. Pratt Street
                              Baltimore, MD 21201
                              (410) 539-5040

                              and

                              Brian Heermance (BH 6805)
                              Morrison, Mahoney & Miller, LLP
                              100 Maiden Lane - 22nd Floor
                              New York, NY 10038

                              Attorneys for Defendant Rhonda Jennings

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**JOAN TRUMAN SMITH**

**V.**

**BRYCO ARMS, Inc., et al.**

**CIVIL ACTION NO:**
**CV 02 3029 (JBW)**

**Honorable Jack B. Weinstein**

## DEFENDANT RHONDA JENNINGS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Rhonda Jennings by and through her undersigned attorneys, hereby submits her Memorandum of Law in Support of her Motion to Dismiss, pursuant to the Federal Rules of Civil Procedure 12(b)(5), for lack of personal jurisdiction, and in support states:

### I. Statement Of Facts

This suit was filed by the Plaintiff alleging negligence and public nuisance against various defendants, including Rhonda Jennings, all the members of the Jennings family, Bryco Arms, Inc. ("Bryco"), and B. L. Jennings, Inc. ("BLJ"), among others, related to a shooting that occurred on May 25, 2000. *See* Complaint, ¶¶1, 10-24. At approximately 7:00 a.m. on September 12, 2002, a private process served Rhonda Jennings with a Summons and Complaint, directed to Rhonda Jennings individually, at her residence located in Las Vegas, Nevada. *See Affidavit of Rhonda Jennings*, attached hereto as Exhibit 1, ¶1. Rhonda Jennings has never been involved with, either indirectly or directly, the manufacture, sale or distribution of firearms. *Id.*, ¶2. She is not, nor has she ever been an officer, director, shareholder, agent, representative or employee of Defendants Bryco, BLJ, Jennings Firearms, Inc. of Nevada, Jennings Firearms, Inc. of California, Calwestco, or any other entity involved or engaged in the firearms business in any capacity. *Id.*, ¶3.

Furthermore, Rhonda Jennings has never been engaged in the firearms business in her personal capacity in any manner or at any time. *Id.*, ¶2.

As to any contacts with the State of New York, she has never owned, rented or leased any property in the State. She has never owned any assets in the State of New York. She has never had a checking, savings or any other type of account with a bank in the State of New York, nor has she ever worked in the State of New York. She has never transacted or conducted any business in, nor ever traveled to, the State of New York. Ex. 1, ¶¶8-9. As Rhonda Jennings has no contacts with New York in any manner, there is no basis for personal jurisdiction by this Court.

## II.     Lack Of Personal Jurisdiction

### A.     The Burden Of Proving That This Court Has Personal Jurisdiction Over Rhonda Jennings Lies With The Plaintiff

This action has been filed by the Plaintiff based upon proper venue and jurisdiction pursuant to 28 U.S.C. §1391, for business contacts with the state of New York, and 28 U.S.C. §1332, for diversity of citizenship. *See* Complaint, ¶¶7,8. "Personal jurisdiction over a defendant in a diversity action is determined by reference to the law of the jurisdiction in which the court sits", and accordingly, the application of New York state law to the instant case is appropriate. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 56 (2d Cir. 1985), *citing United States v. First National City Bank*, 379 U.S. 378, 381-82, 13 L. Ed. 2d 365, 85 S. Ct. 528 (1965); *Arrowsmith v. United Press Int'l.*, 320 F.2d 219, 223 (2d Cir. 1963)(en banc). It is the plaintiff's burden to establish jurisdiction by a preponderance of the evidence. *Hoffritz,* 763 F.2d at 56. The nature of the plaintiff's obligation varies depending on the procedural posture of the litigation. . . "only a *prima facie* showing is necessary to defeat a jurisdiction testing motion before discovery". *Ball v. Metallurgie Hoboker-Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir. 1990), *cert. denied*, 498 U.S. 854,

112 L. Ed. 2d 116, 111 S. Ct. 150 (1990). However, "conclusory allegations without an elucidation

of supporting facts will not suffice to meet Plaintiff's burden." *Abbacor, Inc. v. Miller, et al.*, 2001

U.S. Dist. Lexis 13385, *7 (S.D.N.Y. Aug. 31, 2001).

In determining whether personal jurisdiction exists in this diversity action, the court will

inquire whether Rhonda Jennings is subject to service of process under the New York long-arm

statute, specifically C.P.L.R.§302(a), and whether the jurisdiction is in accordance with the

constitutional requirements of federal due process. *Hamilton v. Accu-tek*, 32 F. Supp. 2d 47, 55

(E.D.N.Y. 1998), *vacated sub nom. Hamilton v. Beretta, U.S.A. Corp.*, 222 F.3d 36 (2d Cir. 2000)

("*Hamilton I*"); *Savin v. Ranier,* 898 F.2d 304, 306 (2d Cir. 1990); *See Ball*, 902 F.2d at 198.

### B.    There Is No Basis For Personal Jurisdiction By This Court Under The New York Long-Arm Statute

To assert jurisdiction in this action under C.P.L.R. §302(a)(3) of the New York long-arm

statute, the Plaintiff must prove that Rhonda Jennings:

> committed a tortuous act outside New York which caused injury to
> person or property inside New York and the defendant (i) regularly
> conducts or solicit business in New York or derives substantial
> revenue from goods used or services and goods sold in New York, or
> (ii) the defendant reasonably expects the act to have consequences in
> New York and to derive substantial revenue from interstate
> commerce.

*Cortland Racquet Club, Inc. v. Oy Saunatec, Ltd.*, 978 F. Supp. 520, 523 (E.D.N.Y. 1997). *See*

*Hamilton I* at 55; *Schaadt v. T.W. Kutter, Inc.*, 169 A.D.2d 969, 969, 564 N.Y.S.2d 865, 866 (1991).

Under C.P.L.R. §302(a)(ii), known as the "foreseeability requirement", "there must be an affirmative

or purposeful act invoking the benefits or protection of New York law." *Hamilton I* at 56; *Schaadt*,

169 A.D. at 970, 564 N.Y.S.2d at 866; *Cortland*, 978 F. Supp. at 523. "In other words, mere

foreseeability of in-state consequence and failure to avert that consequence is not sufficient to

establish personal jurisdiction under New York's long-arm statute." *Cortland*, 978 F. Supp. at 523;
*See Schaadt*, 169 A.D.2d at 969, 564 N.Y.S.2d; *See World-Wide Volkswagon Corp. v. Woodson*, 444
U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).  "The test of whether a defendant expects or
should reasonably expect his act to have consequence within the State is an <u>objective</u>, rather than
subjective one".  *Cortland*, 978 F. Supp. at 523 (emphasis added).

### i.   No Basis For Personal Jurisdiction Over
### Rhonda Jennings Individually

The facts in this matter do not support that Rhonda Jennings has committed an act or engaged
in conduct to be subject to jurisdiction under C.P.L.R. §302(a)(i) or (ii). Rhonda Jennings has not
engaged in any conduct that would subject her to jurisdiction under New York's long arm statute.
She has never transacted or conducted business in, nor traveled to, the State of New York for any
purpose.  She has not had any personal contact with the State of New York for any reason.  Ex. 1,
¶¶8-9.

Furthermore, Rhonda Jennings has never been involved with, either indirectly or directly,
the manufacture, sale or distribution of firearms in New York, or in any other state or country. *Id.*,
¶2.  She is not, nor has she ever been an officer, director, shareholder, agent, representative or
employee of any firearm manufacturer or distributor subject to this suit, nor any other firearm entity
not named in this suit. *Id.*, ¶¶2-3.  Rhonda Jennings has never been engaged in the firearms business
in her personal capacity in any manner or at any time. *Id.*, ¶2.  Plaintiff has made no allegations that
Rhonda Jennings committed any specific acts to subject her to jurisdiction in New York or, even
simply, that the handgun recovered in New York from the shooting can be connected in any manner
to Rhonda Jennings personally.  Therefore, there is no basis for personal jurisdiction by this Court
over Rhonda Jennings.

### ii.   No Basis For Personal Jurisdiction Over
### Rhonda Jennings As The Beneficiary
### Of The Rhonda Nevada Trust

Plaintiff suggests that the use of Rhonda Jennings' name to set up a trust, the Rhonda Nevada Trust, to act as a shareholder during the initial formation of Bryco, somehow makes her responsible for or part of the business of the manufacturing, sale and/or distribution of handguns by many of the defendants named in this case, including Bryco, BLJ, Jennings Firearms, Inc. of Nevada, Jennings Firearms, Inc. of California and Calwestco. *See* Complaint, ¶¶17, 20. However, the establishment of the Rhonda Nevada Trust did not involve Rhonda Jennings personally in the operation, manufacturing, sale and distribution of firearms in any way.

When Bryco was incorporated in 1987, the Rhonda Nevada Trust was established for the sole purpose of owning 20% of Bryco's shares. Ex. 1, ¶4. Janice Jennings was the trustee of the Rhonda Nevada trust and  Rhonda Jennings was the beneficiary. *Id.* The remaining Bryco shares were owned equally at 20% by the Bryan Miller Nevada Trust, Janice Jennings, the Kimberly Nevada Trust and the Bradley Nevada Trust.[1] The Nevada trusts existed only to own the Bryco shares, and have no interests or investments in any other corporate entities. The Nevada trusts were set up to expire when the beneficiary of the trust reaches the age of thirty-five.

On December 31, 1998, the shares held by the Rhonda Nevada Trusts, the Kimberly Nevada Trust and the Bradley Nevada trust were purchased by Janice Jennings and she became the sole shareholder of Bryco, leaving the trusts with no shareholder interest in Bryco. *Id.*, ¶5. Since that time, the Rhonda Nevada Trust, with Rhonda Jennings as the beneficiary, ceased to have any further involvement with Bryco, either directly or indirectly. Moreover, since the purchase of the Bryco

---

[1]   Shortly after Bryco's incorporation, Bryan Miller died and Janice Jennings inherited his 20% ownership of Bryco giving her ownership of 40% of Bryco shares. Ex. 1, ¶4.

shares by Janice Jennings, the Rhonda Nevada Trust has owned no assets, and ultimately, expired by its own terms approximately three months ago. *Id.*, ¶¶4-5.

A corporation is an legal entity, endowed with a separate and distinct existence from its shareholders. The purpose for organizing a corporation is to limit the liability of owners and shareholders, and there is "a presumption of separateness between a corporation and its owners which is entitled to substantial weight." *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988), *cert. denied*, 488 U.S. 852, 102 L. Ed. 2d 109, 109 S. Ct. 136 (1988)(citations omitted). Corporations have a legally distinct existence from their shareholders which cannot be ignored. *Port Chester Elec. Construc. Corp. v. Atlas*, 40 N.Y.2d 652, 656, 389 N.Y.2d 327, 331 (1976); *Abbacor*, 2001 U.S. Dist. Lexis 13385 at *13 (shareholders not ordinarily liable for a corporation's acts or breach); *See Musso v. Seiders*, 194 F.R.D. 43, 46 (D. Conn. 1999)("One cannot be held liable for the actions of the corporation simply by virtue of his status as a . . . shareholder"). It then follows that shareholders, acting in the interests of the corporation, will not be subject to personal jurisdiction by this Court, unless evidence is presented to justify otherwise. *See Cooper v. Parsky*, 1997 U.S. Dist. Lexis 4391, *40-42 (S.D.N.Y. Jan. 9, 1997), *aff'd sub nom. Cooper v. Gottlieb*, 2001 U.S. App. Lexis 10504 (2d Cir. May 17, 2001).

The allegations raised against Rhonda Jennings, in her capacity as a beneficiary of the Rhonda Nevada Trust, are even more guarded by legal protections than those afforded to shareholders of a corporation. The Rhonda Nevada Trust was a shareholder of Bryco with Janice Jennings as the trustee. A trustee can generally represent the interests of the beneficiary and it is not necessary that the beneficiary be named in a suit that is brought by a third party against the trust when the trustee can serve to protect the interests of the beneficiary. *See Harrison v. Grobe*, 135 F.R.D. 72, 1991 U.S. Dist. Lexis 3337, *12-13 (S.D.N.Y. Mar. 20, 1991)(withdrawn from

publication).  However, the Plaintiff must aver the facts necessary to extend this Court's jurisdiction over the trust, here the Rhonda Nevada trust as a former shareholder of Bryco.  Mere conclusory statements about Rhonda Jennings' involvement with the trust and the firearms business, as alleged throughout the Complaint, are not sufficient to satisfy the Plaintiff's pleading burden against the Rhonda Jennings as the beneficiary of the Rhonda Nevada Trust or against Rhonda Jennings in any capacity.  *See Abbacor,* 2001 U.S. Dist. Lexis 13385 at *15.

### iii.   No Basis For Personal Jurisdiction Over Rhonda Jennings As The Beneficiary Of The Rhonda Jennings California Trust

Plaintiff also improperly alleges that the use of Rhonda Jennings name to establish a trust, the Rhonda Jennings California Trust, designated as a partner in RKB Investments ("RKB") connects her with the operation and control of the manufacturing, sale and/or distribution of firearms by Bryco, BLJ, Jennings Firearms, Inc. of Nevada, Jennings Firearms, Inc. of California and Calwestco.  *See* Complaint, ¶¶17, 21.  RKB is a general partnership set up under the laws of California on August 25, 1987, naming as partners three trusts, the Rhonda Jennings California Trust, the Kimberley K. Jennings California Trust and the Bradley A. Jennings California Trust.  The co-trustees were Bruce Jennings and Janice Jennings.  Ex. 1, ¶7, Ex. 2.  The principal asset of each trust was the partnership in RKB Investments.  *Id.*, ¶7.  Rhonda Jennings was the beneficiary of the Rhonda Jennings California Trust.  *Id.*

RKB was established for the purpose of buying, selling, leasing and dealing in real estate, and, at no time, has it ever been involved in any aspects of the firearm business.  *Id.*, ¶6.  RKB owns property in the State of California only and has never transacted or conducted business, or owned property, in Nevada, New York or any other state.  Specifically, it has never owned, directly or indirectly, any interest in Bryco, BLJ or any other corporate entity or interest.  RKB only connection

Case 1:02-cv-03029-JBW-CLP   Document 24   Filed 10/02/02   Page 9 of 32 PageID #: 155

to Bryco is that it leases property and other existing structures where Bryco maintains its corporate offices and manufacturing operation. *Id.*, ¶6.

The trusts comprising the general partnership of RKB, the Rhonda Jennings California Trust, the Kimberley K. Jennings California Trust and the Bradley A. Jennings California Trust were set up to expire when the beneficiary of the trust reaches the age of twenty-five. Under this arrangement, the Rhonda Jennings California Trust expired about ten years ago and thus ended Rhonda Jennings' interest as a beneficiary in the trust. [2] *Id.*, ¶7.

The legal arguments raised above with regard to the Plaintiff's inability to subject Rhonda Jennings to personal jurisdiction for her connections to the Rhonda Nevada Trust are equally applicable to Rhonda Jennings status as the beneficiary of the Rhonda Jennings California Trust. Such superficial, cursory claims about Rhonda Jennings designation as a beneficiary of the trust, with nothing more to connect her to any allegation related to the defendants in this case, does not rise to a "purposeful act invoking the benefits of New York law" to satisfy C.P.L.R. §302(a)(i) or (ii). *See Hamilton I* at 55-56.

### C.   Rhonda Jennings Has Not Committed A Tort Outside Of New York

C.P.L.R. §302(a)(3)(i) and (ii) permit jurisdiction over a defendant that commits a tortuous act outside the state of New York. However, as the Second Circuit indicated, "the plaintiff must aver facts that if credited, would suffice to establish *all the requirements* under one of §302a's subsections, including the commission of a tort." *Banks Brussel Lambert v. Fiddler Gonzalez &*

---

[2] The two remaining trusts, the Kimberley K. Jennings California Trust and the Bradley A. Jennings California Trust, are the current partners in RKB Investments and the principal asset of each trust is the partnership in RKB. Ex. 1, ¶7.

*Rodriguez*, 171 F.3d 779, 785 (2d Cir. 1999), *vacated*, 2002 U.S. App. Lexis 19635 (2d Cir. Sept. 20, 2002)(emphasis added).

Again, plaintiff does not specifically allege any facts that Rhonda Jennings committed a tortuous act, either in the state of New York or outside the state.   In fact, any allegation of activity by all defendants seems to stop in Ohio with the legal sale of the subject firearm to Angela Freeman, who is interestingly not named as a defendant in this case. *See* Complaint, ¶2.  Specifically, none of the claims made in the Complaint allege that the manufacturing, distributing and/or selling of the handgun at issue involved Rhonda Jennings personally, nor that she engaged in any type of tortuous activity which would subject her to New York long arm jurisdiction.  "Courts consider the totality of the defendant's contacts with New York in determining whether jurisdiction exist." *Abbacor*, 2001 U.S. Dist. Lexis 13385 at *11.  Rhonda Jennings has no contacts with New York in any manner and accordingly, the long-arm statute can not confer personal jurisdiction over her.

**III.     As Rhonda Jennings Has No Contacts With New York, An Exercise Of Jurisdiction By This Court Would Violate Federal Due Process.**

Assuming *arguendo* that jurisdiction by this Court over Rhonda Jennings is found to be appropriate under the New York long-arm statute, it would be a violation of due process to keep her in this action as there is no evidence of contacts sufficient to satisfy jurisdiction in New York.  "The due process determination involves the assessment first as to whether the defendant has sufficient contacts with the forum state to justify the exercise of personal jurisdiction, and second, as to whether the assertion of jurisdiction is reasonable under the circumstances and "comports with the 'traditional notions of fair play and substantial justice'". *Hamilton I*, 32 F. Supp. 2d at 57.

The factual arguments raised above regarding the lack of evidence as to Rhonda Jennings' activities with New York to establish personal jurisdiction apply equally to this due process analysis.

9

There is simply no evidence to establish that she has committed an act, either negligent or not, in or out of the state of New York, that she conducts or solicits business in New York, or that she took any act to purposefully avail herself of the benefits of New York.

To establish minimum contacts, the plaintiff must show that "'specific' jurisdiction exists through a showing that plaintiff's claims arise from or are related to a defendant's activities in the forum." *Id.*; *See Philip Morris*, 86 F. Supp. 2d at 94.  The minimum contacts analysis is 'fact-intensive'". *Hamilton I*, 32 F. Supp. 2d at 59, n.7.  If the plaintiff's factual evidence in support of a "minimum contacts" argument is weak, the defendant's threshold for establishing unreasonableness to defeat jurisdiction is lessened. *Philip Morris*, 86 F. Supp. 2d at 96.  In the instant action, there is not a scintilla of evidence that rises to the specific proof, let alone any proof, that is required of the plaintiff to establish that Rhonda Jennings had minimum contacts with New York.

Moreover, if Rhonda Jennings would be subject to this Court's jurisdiction, it would offend the "traditional notions of fair play and substantial justice" and would be unreasonable under the circumstances of this particular case. *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996), *cert. denied*, 519 U.S. 1007, 136 L. Ed. 2d 398, 117 S. Ct. 508 (1996)(citations omitted).  In conducting a "reasonableness inquiry", the Court will consider five factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.*; *Hamilton I*, 32 F. Supp. 2d at 59.

Rhonda Jennings resides in Las Vegas, Nevada, not in New York. Ex. 1 ¶1.  It would be burdensome, inconvenient and unreasonable for Rhonda Jennings to defend herself in New York,

when she resides in Nevada and does not travel, and has not traveled, to New York for any purpose or at any time. *Id.*, ¶9. The lack of any solid allegations advanced by the plaintiff, including the absence of minimum contacts, to link Rhonda Jennings to any of the allegations of negligence and public nuisance violates "fair play and substantial justice", warranting that this Court dismiss Rhonda Jennings from this action.

## IV.    Conclusion

For the foregoing reasons, this Court lacks personal jurisdiction over Rhonda Jennings, individually, or as the beneficiary of the Rhonda Nevada Trust or the Rhonda Jennings California Trust, under New York law and an exercise of jurisdiction over Rhonda Jennings would violate due process. Accordingly, Rhonda Jennings respectfully requests that this Court grant her Motion to Dismiss and Memorandum of Law in Support of Her Motion to Dismiss for Lack of Personal Jurisdiction, and for such further relief as this Court may deem proper and necessary.

Dated: New York, New York
           October _____, 2002

                                        *Robert E. Scott Jr.*
                                        Robert E.  Scott, Jr. (RS 9592)
                                        Lauren E. Lacey (LL2999)
                                        Brittany L. Roberts (BR 4744)
                                        Semmes, Bowen & Semmes
                                        250 W. Pratt Street
                                        Baltimore, MD 21201
                                        (410) 539-5040

                                        and

                                        Brian Heermance (BH 6805)
                                        Morrison, Mahoney & Miller, LLP
                                        100 Maiden Lane - 22nd Floor
                                        New York, NY 10038

                                        Attorneys for Defendant Rhonda Jennings

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of October, 2002, a copy of Defendant Rhonda Jennings Memorandum of Law in Support of Her Motion to Dismiss for Lack of Personal Jurisdiction was mailed, first-class, postage prepaid and filed electronically to: Elisa Barnes, 111 Broadway, 4th Floor, New York City, New York 10006, Attorney for Plaintiff, and filed electronically to all counsel of record.

Robert E. Scott, Jr.

(B0291423.WPD;1) 20147-17

12

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**JOAN TRUMAN SMITH**

**V.**

**BRYCO ARMS, Inc., et al.**

**CIVIL ACTION NO:**
**CV 02 3029 (JBW)**

**Honorable Jack B. Weinstein**

### <u>ORDER</u>

Upon consideration of Defendant Rhonda Jennings' Motion to Dismiss for Lack of Personal

Jurisdiction, and any Oppositions filed thereto, it is this _____ day of _____,

2002, hereby,

**ORDERED**, that Defendant Rhonda Jennings' Motion to Dismiss for Lack of Personal

Jurisdiction is **GRANTED**.

_____
JUDGE JACK B. WEINSTEIN

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOAN TRUMAN SMITH** | **CIVIL ACTION NO:** |
| | **CV 02 3029 (JBW)** |
| **V.** | |
| | **Honorable Jack B. Weinstein** |
| **BRYCO ARMS, Inc., et al.** | |

**AFFIDAVIT OF RHONDA JENNINGS**

| | | |
|---|---|---|
| **STATE OF NEVADA** | ) | |
| | ) | **ss:** |
| **COUNTY OF CLARK** | ) | |

Before me, the undersigned authority, personally appeared Rhonda Jennings, who is known to me, and who after being duly sworn deposes and says:

I, RHONDA JENNINGS, being over eighteen (18) years of age and competent to testify as a witness and having personal knowledge of the facts set forth below do herein make oath in due form as follows:

1.      I am a citizen and resident of the State of Nevada.  At approximately 7:00 a.m. on September 12, 2002, I was served personally with a Summons and Complaint directed to Rhonda Jennings, individually, by a private process at my residence located in Las Vegas, Nevada.

2.      I have never been involved with, either indirectly or directly, the manufacture, sale or distribution of firearms in New York, or in any other state or country.  I have never been engaged in the firearms business in my personal capacity in any manner or at any time.

3.      I am not, nor have I ever been an employee, board member, officer, director, shareholder, agent or representative of Bryco Arms, Inc. ("Bryco"), B.L. Jennings, Inc. ("BLJ"), Jennings Firearms of Nevada, Inc., Jennings Firearms of California, Inc., Calwestco, or any other entity involved in the firearms business.

4.      When Bryco was incorporated in 1987, a trust was set up in my name as the Rhonda Nevada Trust for the sole purpose of owning 20% of Bryco's shares.  Janice Jennings was the trustee of the Rhonda Nevada trust and I was the beneficiary.  The remaining Bryco shares were owned equally, 20% by the Bryan Miller Nevada Trust, 20% by Janice Jennings, 20% by the Kimberly Nevada Trust and 20% by the Bradley Nevada Trust.  Shortly after Bryco's incorporation, Bryan Miller died and Janice Jennings inherited his 20% ownership of Bryco giving her ownership of 40% of the Bryco shares. The Nevada trusts existed only to own the Bryco shares and have no interests or investments in any other corporate entities.  The Nevada trusts were set up to expire when the beneficiary of the trust reaches the age of thirty-five.  Under this arrangement, the Rhonda Nevada Trust matured about three months ago and now no longer exists.

5.      On December 31, 1998, the shares held by the Rhonda Nevada Trust, the Kimberly Nevada Trust and the Bradley Nevada trust were purchased by Janice Jennings and she became the sole shareholder of Bryco, in full and proper accordance with Nevada law regarding private corporations, Nev. Rev. Stat. Ann. §78.115, *et seq.* (2001).  *See Notes dated December 31, 1998,* attached hereto as Ex. 1.  Since that time, the trusts, including the Rhonda Nevada Trust, ceased to have any further involvement with Bryco, either directly or indirectly.  Moreover, since the purchase of the Bryco shares by Janice Jennings, the trusts, including the Rhonda Nevada Trust have owned no assets.

2

6.     RKB Investments ("RKB") was established for the purpose of buying, selling, leasing and dealing in real estate, and, at no time, has it ever been involved in any aspects of the firearm business.   Specifically, it has never owned, directly or indirectly, any interest in Bryco, BLJ, Jennings Firearms of Nevada, Inc., Jennings Firearms of California, Inc., Calwestco, or any other entity.  RKB's only connection to Bryco is that it leases property and other existing structures where Bryco maintains its corporate offices and manufacturing operation.  RKB owns property in the State of California only and has never transacted or conducted business, or owned property, in Nevada, New York or any other state.

7.     RKB Investments is a general partnership that was set up under the laws of California on August 25, 1987, naming as partners three trusts, the Rhonda Jennings California Trust, the Kimberley K. Jennings California Trust and the Bradley A. Jennings California Trust, and as co-trustees, Bruce Jennings and Janice Jennings.  *See General Partnership Agreement of RKB Investments, dated August 25, 1987*, attached hereto as Ex. 2.  The principal asset of each trust was the partnership in RKB Investments.  The trusts comprising the general partnership of RKB Investments, the Rhonda Jennings California Trust, the Kimberley K. Jennings California Trust and the Bradley A. Jennings California Trust were set up to expire when the beneficiary of the trust reaches the age of twenty-five.  I was the beneficiary of the Rhonda Jennings California Trust. Under this arrangement, the Rhonda Jennings California Trust expired about ten years ago.  The two remaining trusts, the Kimberley K. Jennings California Trust and the Bradley A. Jennings California Trust, are the current partners in RKB Investments.

3

8.    I have never owned, rented or leased  any property in the State of New York.   I have also never owned any assets in the State of New York,  nor have I  ever transacted or conducted any business in the State of New York.  I have never had a checking, saving or any other type of account with a bank in the State of New York, nor have I ever worked in the State of New York.

9.    I have never traveled to the State of New York in my personal or business capacity for any reason.   I have had no personal contact whatsoever with the State of New York.

I declare under the penalty of perjury under the laws of the State of Nevada that the contents of the foregoing affidavit are true and correct to the best of my knowledge.

Dated: _9-28-02_

_Rhonda Jennings_
Rhonda Jennings

Sworn to me this
_28th_ day of _Sept._ , 2002.          Date: _9/28/02_

_Charles Herman_
Notary Public

My commission expires on: _11/12/2003_

Notary Public-State Of Nevada
COUNTY OF CLARK
CHARLES HERMAN
My Appointment Expires
November 12, 2003
No. 00-63927-1

(B0291462.WPD;1) 20147-17

# EXHIBIT 1

# TO AFFIDAVIT OF
# RHONDA JENNINGS

NOTE - STRAIGHT

$20,000.00                    Stateline, Nevada                 December 31, 1998

At all times after date, for value received, the undersigned maker(s) promise to
pay to Rhonda Jennings Nevada Trust, or order at Stateline, Nevada, the sum of
twenty thousand dollars, with interest payable on the unpaid principal at the
rate of 6.0% per cent per annum, payable on demand.

Should interest not be so paid when due, it shall thereafter bear like interest
as the principal.  Should default be made in payment of interest when due, the
whole sum of principal and accrued interest shall become immediately due, without
notice, at the option of the holder of this note.  Interest after maturity will
accrue at the rate indicated above.  Principal and interest are payable in lawful
money of the United States.  Each maker will be jointly and severally liable and
consents to renewals, replacements and extensions of time for payment hereof
before, at or after maturity, and waives presentment, demand and protest and the
right to assert any statute of limitations.  A married person who signs this note
agrees that recourse may be had against his/her separate property for any
obligation contained herein.  If any action be instituted on this note, the
undersigned promise(s) to pay such sum as the Court may fix as attorney's fees.


_Janice Jennings_                    to Rhonda Jennings Nevada Trust


                                          10-8-99
                                          Pd.
                                          CK 3221


        Balance of note    $ 20,000 00
        Interest to June 30      600.00
        INTEREST for 3rd Qtr.    300.00
        Balance due        $ 20,600.00

                    20, 900.00

NOTE – STRAIGHT

$20,000.00                              Stateline, Nevada                    December 31, 1998

At all times after date, for value received, the undersigned maker(s) promise to
pay to Kimberly Jennings Nevada Trust, or order at Stateline, Nevada, the sum of
twenty thousand dollars, with interest payable on the unpaid principal at the
rate of 6.0% per cent per annum, payable on demand.

Should interest not be so paid when due, it shall thereafter bear like interest
as the principal.  Should default be made in payment of interest when due, the
whole sum of principal and accrued interest shall become immediately due, without
notice, at the option of the holder of this note.  Interest after maturity will
accrue at the rate indicated above.  Principal and interest are payable in lawful
money of the United States.  Each maker will be jointly and severally liable and
consents to renewals, replacements and extensions of time for payment hereof
before, at or after maturity, and waives presentment, demand and protest and the
right to assert any statute of limitations.  A married person who signs this note
agrees that recourse may be had against his/her separate property for any
obligation contained herein.  If any action be instituted on this note, the
undersigned promise(s) to pay such sum as the Court may fix as attorney's fees.

_____        to Kimberly Jennings Nevada Trust
        Janice Jennings


                                                    10-8-99
                                                    pd. 3222


Balance of Note            $ 20,000.00
Interest to June 30            600.00
IN. add. 100. per mo.          300.00
     Balance Due           $ 20,600.00


                    20.900.

NOTE - STRAIGHT

$20,000.00                          Stateline, Nevada                    December 31, 1998

At all times after date, for value received, the undersigned maker(s) promise to
pay to Bradley Jennings Nevada Trust, or order at Stateline, Nevada, the sum of
twenty thousand dollars, with interest payable on the unpaid principal at the
rate of 6.0% per cent per annum, payable on demand.

Should interest not be so paid when due, it shall thereafter bear like interest
as the principal.  Should default be made in payment of interest when due, the
whole sum of principal and accrued interest shall become immediately due, without
notice, at the option of the holder of this note.  Interest after maturity will
accrue at the rate indicated above. Principal and interest are payable in lawful
money of the United States.  Each maker will be jointly and severally liable and
consents to renewals, replacements and extensions of time for payment hereof
before, at or after maturity, and waives presentment, demand and protest and the
right to assert any statute of limitations. A married person who signs this note
agrees that recourse may be had against his/her separate property for any
obligation contained herein.   If any action be instituted on this note, the
undersigned promise(s) to pay such sum as the Court may fix as attorney's fees.

_Janice Jennings_                 to Bradley Jennings Nevada Trust

ck
Pd. 10-8-99
ck. 3221

BALANCE of note       $ 20,000.00
Interest to June 30        600.00
IN. add. 100. per mo.      300.00
BALANCE Due           $ 20,600.00

20,900.00

# EXHIBIT 2

# TO AFFIDAVIT OF
# RHONDA JENNINGS

## GENERAL PARTNERSHIP AGREEMENT

### 1

### Parties & Date

THIS PARTNERSHIP AGREEMENT is entered into this 25 _TH_ day of _AUGUST_, 1987, at _CHINO_, California, and is effective on the 25 _TH_ day of _AUGUST_, 1987, by and between RHONDA D. JENNINGS TRUST DATED 05/4/81, hereinafter referred to as "R TRUST"; and KIMBERLY K. JENNINGS TRUST DATED 05/4/81, hereinafter referred to as "K TRUST", and BRADLEY A. JENNINGS TRUST, hereinafter referred to as "B TRUST".

### 2

### Recitals

The partners desire to form a general partnership under the laws of the State of California for the purposes and on the terms and conditions stated in this Agreement.

The parties to this Agreement agree to become partners and to form a general partnership under the laws of the State of California, and therefore, agree as follows:

### 3

### Partnership Name

The name of this partnership shall be "RKB INVESTMENTS".

### 4

### Place of Business

The partners' principal place of business shall be at 5435 Dover Street, Chino, County of San Bernardino, State of California.  The principal place of business may be changed from time to time and other places of business may be established by actions taken in accordance with provisions of this Agreement that govern management of the partnership's business and affairs.

### 5

### Term

The partnership shall begin as of the date of this Agreement and shall continue until one (1) of the partners shall give one hundred eighty (180) days' written notice to dissolve the partnership.  One Hundred eighty (180) days after

this notice is given, the partnership may dissolve and its
affairs shall be would up.

6

## Purpose

The purpose of this partnership shall be to buy, sell,
lease, and deal in services, personal property, and real
property as well as to engage in any business or undertaking
agreed on by the Partners.

7

## Partners' Capital Contribution

Each partner shall initially be entitled to credit to its
capital account for an equal one-third (1/3rd) of the
contribution to the partnership, as capital, cash in the amount
shown on Exhibit "A" attached hereto and made a part hereof by
reference. No other debts or liabilities are assumed by the
partnership and each partner represents and warrants that no
other obligation attaches to this partnership.

8

## Additional Capital

The partners shall agree to any additional capital
contributions.

9

## Voluntary Contributions

No partner may make any voluntary contribution of capital
to the partnership without the consent of the other partners.

10

## Withdrawal of Capital

No partner may withdraw capital from the partnership
without the consent of the other partners.

11

## Profit and Loss

The partnership profits and losses shall be shared equally
among the partners.

12

### Partners' Drawing Accounts

Each partner may be entitled to draw against profits such amounts as shall, from time to time, be agreed upon by the partners. These amounts shall be charged to the partners' drawing accounts as they are drawn.

13

### Partnership Year End

The partnership shall be on a calendar year.

14

### Account Method

The partnership books shall be kept on the ~~accrual~~ *CASH* basis.

15

### Capital Accounts

An individual capital account shall be maintained for each partner, and that partner's capital contributions shall be credited to that account. No additional share of profits or losses shall inure to any partner because of changes or fluctuations in its capital account.

16

### Partnership Books

Proper and complete books of account of the partnership business shall be kept at the partnership's principal place of business and shall be open for inspection by any partner or its accredited representatives at any reaasonable time during business hours. The accounting records shall be maintained in accordance with generally accepted bookkeeping practices for this type of business.

17

### Control of Majority in Number

Each partner shall participate in the control, management and direction of the business of the partnership, and in exercising this control, management and direction, each partner shall have the same vote as the other partners. In the case of a Trust being a partner and if the Trust authorizes more than one (1) Trustee to act on behalf of the Trust, the Co-Trustees shall agre between them and shall have one (1) vote in this partnership. A partner with Co-Trustees shall designate the

3

spokesman for the Trust-partner.

18

## Acts Requiring Partners' Consent

The following acts may be done only with the consent of all of the partners:

(a)  Borrowing money in the partnership's name;

(b)  Transferring, hypothecating, or compromising or releasing any partnership claim, except on payment in full;

(c)  Selling, leasing, or hypothecating any partnership property or entering into any contract for any such purpose;

(d)  Suffering or causing anything to be done whereby property may be seized or attached or taken in execution, or its ownership or possession otherwise endangered.

19

## Dissolution

On any dissolution of the partnership, the continuing operation of thepartnership's business shall be confined to those activities reasonably necessary to wind up the partnership's affairs, discharge its obligations, and preserve and distribute its assets.  Promptly upon dissolution, a Notice of Dissolution shall be published under Section 15035.5 of the California Corporations Code or any equivalent successor statute then applicable.

20

## Notices

Any written notice to any of the partners as required or permitted under this Partnership Agreement shall be deemed to have been duly given on the date of service if served personally on the party to whom notice is to be given, or on the second day after mailing if mailed to the party to whom notice is to be given by first class or air mail, certified, postage prepaid, and addressed to the addressee at the address stated opposite the party's name below, or at the most recent address, specified by written notice given to the send by the addressee under this provision;  notices to the partnership shall be similarly given and addressed to it at its principal place of business.

4

## Governing Law

This General Partnership Agreement ie executed and intended to be performed in the State of California and the laws of that state shall govern its interpretation and effect.

22

## Successors

This Partnership Agreement shall be binding on and inure to the benefit of the respective successors, assigns and personal representatives of the parties, except to the extent of any contrary provision in this Agreement.

23

## Severability

If any term, provision, covenant, or condition of this Partnership Agreement is held by a Court of competent jurisdiction to be invalid, void or unenforceable, the rest of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

24

## Entire Agreement

This instrument contains the entire agreement of the parties relating to the rights granted and obligations assumed in this instrument. Any oral representation or modification concerning this instrument shall be of no force or effect unless contained in a subsequent written modification signed by all of the parties.

IN WITNESS WHEREOF, the parties have signed this

25TH Day of August 1987

*Bruce Jennings* Co TRUSTEE

*Janice Kay Jennings* CO TRESTEE

5

General Partnership Agreement on the date first above stated.

RHONDA D. JENNINGS TRUST DATED 05/4/81:

By: _____ Trustee

By: _____ Trustee

Address: 5435 Dover St.
Chino, Ca 91710

KIMBERLY K. JENNINGS TRUST DATED 05/4/81:

By: _____ Trustee

By: _____ Trustee

Address: 5435 Dover St.
Chino, Ca 91710

BRADLEY A. JENNINGS TRUST:

By: _____ Trustee

By: _____ Trustee

Address: 5435 Dover St.
Chino, Ca. 91710



OFFICIAL SEAL
CYNTHIA I MILES
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My comm. expires SEP 18, 1997
12050-A Central Avenue, Chino, CA 91710

5

EXHIBIT "A"

GENERAL PARTNERSHIP AGREEMENT

RKB INVESTMENTS

PARTNER'S CAPITAL CONTRIBUTION

RHONDA D. JENNINGS TRUST
   DATED 05/4/81.............................$

KIMBERLY K. JENNINGS TRUST
   DATED 05/4/81.............................$

BRADLEY A. JENNINGS TRUST..............$

7