### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

JOAN TRUMAN SMITH

V.

BRYCO ARMS, Inc., et al.

CIVIL ACTION NO:
CV 02 3029 (JBW)

Honorable Jack B. Weinstein

### DEFENDANTS, THE RHONDA D. JENNINGS NEVADA TRUST, THE KIMBERLY K. JENNINGS NEVADA TRUST, AND THE BRADLEY A. JENNINGS NEVADA TRUST, NOTICE OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

PLEASE TAKE NOTICE that, upon the annexed Memorandum of Law in Support of Their

Motion to Dismiss for Lack of Personal Jurisdiction, and Affidavit of Janice Jennings, together with

the attached exhibits, and all prior pleadings and proceedings had herein, Defendants, The Rhonda

D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, and The Bradley A. Jennings

Nevada Trust, will move this Court, oral argument requested, before the Honorable Jack B.

Weinstein, United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York, 11201, on a

date specified by the Court, for an order pursuant to Rule 12(b) of the Federal Rules of Civil

Procedure dismissing Plaintiff's claims as against Defendants, the Rhonda D. Jennings Nevada

Trust, The Kimberly K. Jennings Nevada Trust, and The Bradley A. Jennings Nevada Trust, for lack

of personal jurisdiction.

Dated: New York, New York
        November 15 , 2002

Respectfully submitted,

Robert E. Scott Jr. /s

Robert E.  Scott, Jr. (RES 9592)
Brittany L. Roberts (BLR 4744)
Semmes, Bowen & Semmes
250 W.  Pratt Street
Baltimore, MD 21201
(410) 539-5040

and

Brian Heermance (BPH 6805)
Morrison, Mahoney & Miller, LLP
100 Maiden Lane - 22nd Floor
New York, NY 10038

Attorneys for Defendants, The Rhonda D.
Jennings Nevada Trust, The Kimberly K.
Jennings Nevada Trust, and The Bradley
A. Jennings Nevada Trust

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

JOAN TRUMAN SMITH

V.

BRYCO ARMS, Inc., et al.

CIVIL ACTION NO:
CV 02 3029 (JBW)

Honorable Jack B. Weinstein

### DEFENDANTS, THE RHONDA D. JENNINGS NEVADA TRUST, THE KIMBERLY K. JENNINGS NEVADA TRUST, AND THE BRADLEY A. JENNINGS NEVADA TRUST, MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendants, The Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, and The Bradley A. Jennings Nevada Trust, ("The Nevada Trusts"), by and through their undersigned attorneys, hereby submit this Memorandum of Law in Support of Their Motion to Dismiss, pursuant to the Federal Rules of Civil Procedure 12(b)(5), for lack of personal jurisdiction, and in support state:

### I. Statement Of Facts

This suit was recently filed by the Plaintiff alleging negligence and public nuisance against various Defendants, including The Nevada Trusts, all the members of the Jennings family, Bryco Arms, Inc. ("Bryco"), and B. L. Jennings, Inc. ("BLJ"), among others, related to a shooting that occurred on May 25, 2000. *See* Complaint, ¶¶1, 10-24.

At approximately 12:30 p.m. on October 3, 2002, a private process served Janice Jennings with 15 copies of the Summons and Complaint at her residence in Copper Canyon, Texas. *See Affidavit of Janice Jennings as Trustee of The Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, and The Bradley A. Jennings Nevada Trust, attached hereto as Exhibit 1,* ¶3. The Summonses were directed to: Janice Jennings, individually; Bryco Arms, Inc.; Bradley Jennings, individually; Kimberly Jennings, individually; and Rhonda Jennings, individually. *Id.*

Janice Jennings asked the process server who he was serving and he stated "Janice Jennings, individually, and Bryco Arms, Inc."[1]  *Id.*  Janice Jennings specifically told the process server that she could not accept service for Bruce Jennings, individually, or B.L. Jennings, Inc. ("BLJ") and he stated "I am not serving anyone other than you, individually, and Bryco." *Id.*  Although the process server stated that he was only serving Janice Jennings, individually, and Bryco Arms, Inc., Janice Jennings has agreed to accept service, only in this case, on behalf of Bradley Jennings, Kimberly Jennings, The Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, and The Bradley A. Jennings Nevada Trust.[2]  *Id.*

Janice Jennings is the designated trustee of the three Nevada Trusts and Rhonda Jennings, Kimberly Jennings, and Bradley Jennings are the beneficiaries.  *Id.*, ¶5.  The Nevada Trusts were established for the sole purpose of owning 20% of Bryco's shares each.  *Id.*  The Nevada Trusts had no interests or investments in any other corporate entities.  *Id.*  The Nevada Trusts were set up to expire when the beneficiary of the trust reaches the age of thirty-five.  *Id.*  Under this arrangement, The Rhonda D. Jennings Nevada Trust matured and expired a few months ago.  *Id.*

At the point of incorporation in 1987, Bryco was owned 20% by The Bryan Miller Nevada Trust, 20% by Janice Jennings, 20% by The Rhonda D. Jennings Nevada Trust, 20% by The Kimberly K. Jennings Nevada Trust and 20% by The Bradley A. Jennings Nevada Trust.  *Id.*, ¶ 4. Shortly after Bryco's incorporation, Bryan Miller died and Janice Jennings inherited his 20% ownership of Bryco giving her ownership of 40% of the Bryco shares.  *Id.*  On December 31, 1998,

---

[1]  Bryco Arms, Inc. was served on June 28, 2002 and answered the Complaint on July 18, 2002.  Rhonda Jennings was served on September 12, 2002 at her home in Las Vegas, Nevada and filed a Motion to Dismiss for Lack of Personal Jurisdiction on October 2, 2002.

[2]  Similar Motions to Dismiss for Lack of Personal Jurisdiction are being filed for each of the Defendants for which Janice Jennings accepted service of process.

Janice Jennings purchased the Bryco shares held by the three Nevada Trusts and became the sole

shareholder of Bryco, in full and proper accordance with Nevada law regarding private corporations,

Nev. Rev. Stat. Ann. §78.115, *et seq.* (2001). *Id.*, ¶ 6; *See Notes dated December 31, 1998, attached

*hereto as Ex. 1*. Since that time, the Nevada Trusts ceased to have any further involvement with

Bryco, either directly or indirectly. *Id., ¶6.*

Furthermore, the Nevada Trusts have never been involved with, either indirectly or directly,

the manufacture, sale or distribution of firearms in New York, or in any other state or country. *Id.*,

¶ 7. Aside from owning the shares in Bryco from 1987 to 1998, which is prior to the shooting at

issue in this case, the Trusts have never been connected to, involved with or engaged in business

with Defendants Bryco, BLJ, Jennings Firearms, Inc. of Nevada, Jennings Firearms, Inc. of

California, Calwestco, or any other entity in the firearms business. *Id., ¶¶5-7.*

As to any contacts with the State of New York, the Nevada Trusts have never owned, rented

or leased any property in the State. *Id.*, ¶ 8. They have never owned any assets nor transacted or

conducted any business in the State of New York. *Id.* The Nevada Trusts have no contacts with

New York in any manner, therefore, there is no basis for personal jurisdiction by this Court over The

Nevada Trusts.

      **II**.    **Lack Of Personal Jurisdiction**

           **A.**    **The Burden Of Proving That This Court Has**
                    **Personal Jurisdiction Over The Nevada Trusts**
                    **Lies With The Plaintiff**

This action has been filed by the Plaintiff based upon proper venue and jurisdiction pursuant

to 28 U.S.C. §1391, for business contacts with the State of New York, and 28 U.S.C. §1332, for

diversity of citizenship. *See* Complaint, ¶¶7,8. "Personal jurisdiction over a defendant in a diversity

action is determined by reference to the law of the jurisdiction in which the court sits", and

accordingly, the application of New York state law to the instant case is appropriate. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 56 (2d Cir. 1985), *citing United States v. First National City Bank*, 379 U.S. 378, 381-82, 13 L. Ed. 2d 365, 85 S. Ct. 528 (1965); *Arrowsmith v. United Press Int'l.*, 320 F.2d 219, 223 (2d Cir. 1963)(en banc).  It is the plaintiff's burden to establish jurisdiction by a preponderance of the evidence.  *Hoffritz,* 763 F.2d at 56.  The nature of the plaintiff's obligation varies depending on the procedural posture of the litigation. . . "only a *prima facie* showing is necessary to defeat a jurisdiction testing motion before discovery".  *Ball v. Metallurgie Hoboker-Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir. 1990), *cert. denied*, 498 U.S. 854, 112 L. Ed. 2d 116, 111 S. Ct. 150 (1990).  However, "conclusory allegations without an elucidation of supporting facts will not suffice to meet Plaintiff's burden." *Abbacor, Inc. v. Miller, et al.*, 2001 U.S. Dist. Lexis 13385, *7 (S.D.N.Y. Aug. 31, 2001).

In determining whether personal jurisdiction exists in this diversity action, the court will inquire into whether the Nevada Trusts are subject to service of process under the New York long-arm statute, specifically C.P.L.R.§302(a), and whether the jurisdiction is in accordance with the constitutional requirements of federal due process. *Hamilton v. Accu-tek*, 32 F. Supp. 2d 47, 55 (E.D.N.Y. 1998), *vacated sub nom. Hamilton v. Beretta, U.S.A. Corp.*, 222 F.3d 36 (2d Cir. 2000) ("*Hamilton I*"); *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990); *See Ball*, 902 F.2d at 198.

### B.  There Is No Basis For Personal Jurisdiction By This Court Under The New York Long-Arm Statute

To assert jurisdiction in this action under C.P.L.R. §302(a)(3) of the New York long-arm statute, the Plaintiff must prove that the Nevada Trusts:

> committed a tortuous act outside New York which caused injury to person or property inside New York and the defendant (i) regularly conducts or solicits business in New York or derives substantial revenue from goods used or services and goods sold in New York, or

4

(ii) the defendant reasonably expects the act to have consequences in New York and to derive substantial revenue from interstate commerce.

*Cortland Racquet Club, Inc. v. Oy Saunatec, Ltd.*, 978 F. Supp. 520, 523 (E.D.N.Y. 1997). *See Hamilton I* at 55; *Schaadt v. T.W. Kutter, Inc.*, 169 A.D.2d 969, 969, 564 N.Y.S.2d 865, 866 (1991). Under C.P.L.R. §302(a)(ii), known as the "foreseeability requirement", "there must be an affirmative or purposeful act invoking the benefits or protection of New York law." *Hamilton I* at 56; *Schaadt*, 169 A.D. at 970, 564 N.Y.S.2d at 866; *Cortland*, 978 F. Supp. at 523. "In other words, mere foreseeability of in-state consequence and failure to avert that consequence is not sufficient to establish personal jurisdiction under New York's long-arm statute." *Cortland*, 978 F. Supp. at 523; *See Schaadt*, 169 A.D.2d at 969, 564 N.Y.S.2d; *See World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). "The test of whether a defendant expects or should reasonably expect his act to have consequence within the State is an <u>objective</u>, rather than subjective one". *Cortland*, 978 F. Supp. at 523 (emphasis added).

### i.    No Basis For Personal Jurisdiction Over The Nevada Trusts

The facts in this matter do not support that the Nevada Trusts have committed an act or engaged in conduct to be subject to jurisdiction under C.P.L.R. §302(a)(i) or (ii). The Nevada Trusts have not engaged in any conduct that would subject them to jurisdiction under New York's long-arm statute. Aside from owning the shares in Bryco from 1987 to 1998, which is prior to the shooting at issue in this case, the Trusts have never been connected to, involved with or engaged in business with Defendants Bryco, BLJ, Jennings Firearms, Inc. of Nevada, Jennings Firearms, Inc. of California, Calwestco, or any other entity in the firearms business. *Ex. 1, ¶¶* 5,6,7. The Nevada

5

Trusts have never owned any assets nor transacted or conducted any business in the State of New York. *Id., ¶ 8.* They have never owned, rented or leased any property in the State. *Id.*

Furthermore, the Nevada Trusts have never been involved with, either indirectly or directly, the manufacture, sale or distribution of firearms in New York, or in any other state or country. *Id.,* ¶¶7, 8. Plaintiff has made no allegations that the Nevada Trusts committed any specific acts to subject them to jurisdiction in New York or, even simply, that the handgun recovered in New York from the shooting can be connected in any manner to the Nevada Trusts.

The Plaintiff's claims are based on a loosely-bound theory that a handgun legally distributed and sold in Ohio, which was then sold in the illegal, underground market in New York **on several occasions**, which resulted in a shooting in New York, must be connected to these Defendants since, at some point prior to the subject shooting, they owned shares in Bryco, a company engaged in the business of providing handguns through legal channels of commerce. Such bald claims, with no supporting evidence, do not rise to a "purposeful act invoking the benefits of New York law" to satisfy C.P.L.R. §302(a)(i) or (ii) . *See Hamilton I* at 55-56. Therefore, there is no basis for personal jurisdiction by this Court over The Nevada Trusts.

### ii.   No Basis For Personal Jurisdiction Over The Nevada Trusts As Former Shareholders In Bryco Arms, Inc.

Plaintiff suggests that the Nevada Trusts owning shares in Bryco from 1987 to 1998 somehow makes them responsible for or part of the business of the manufacturing, sale and/or distribution of handguns by many of the Defendants named in this case, including Bryco, BLJ, Jennings Firearms, Inc. of Nevada, Jennings Firearms, Inc. of California and Calwestco. *See* Complaint, ¶¶17, 20. However, the Nevada Trusts simply owned shares in Bryco and were not,

directly or indirectly, involved in the operation, manufacture, sale and/or distribution of firearms in any way. *Ex. 1.,*¶ 7.

The Nevada Trusts were established for the sole purpose of owning 20% of Bryco's shares each. *Id.,*¶ 5. The Trusts had no interests or investments in any other corporate entities. *Id.* The Nevada Trusts were set up to expire when the beneficiary of the trust reaches the age of thirty-five. *Id.* Under this arrangement, The Rhonda D. Jennings Nevada Trust matured and expired a few months ago. *Id.*

At the point of incorporation in 1987, Bryco was owned 20% by The Bryan Miller Nevada Trust, 20% by Janice Jennings, 20% by The Rhonda D. Jennings Nevada Trust, 20% by The Kimberly K. Jennings Nevada Trust and 20% by The Bradley A. Jennings Nevada Trust. *Id.*, ¶ 4. Shortly after Bryco's incorporation, Bryan Miller died and Janice Jennings inherited his 20% ownership of Bryco giving her ownership of 40% of the Bryco shares. *Id.* On December 31, 1998, Janice Jennings purchased the Bryco shares held by the three Nevada Trusts and became the sole shareholder of Bryco, in full and proper accordance with Nevada law regarding private corporations, Nev. Rev. Stat. Ann. §78.115, *et seq.* (2001). *Id.*, ¶ 6; *See Notes dated December 31, 1998, attached hereto as Ex. 2.* Since that time, the Nevada Trusts ceased to have any further involvement with Bryco, either directly or indirectly. *Id.*

Furthermore, the Nevada Trusts have never been involved with, either indirectly or directly, the manufacture, sale or distribution of firearms in New York, or in any other state or country. *Id.*, ¶ 7. Aside from owning the shares in Bryco from 1987 to 1998, which is prior to the shooting at issue in this case, the Trusts have never been connected to, involved with or engaged in business with Defendants Bryco, BLJ, Jennings Firearms, Inc. of Nevada, Jennings Firearms, Inc. of California, Calwestco, or any other entity in the firearms business. *Id.,* ¶¶ 5-7.

A corporation is a legal entity, endowed with a separate and distinct existence from its shareholders. The purpose for organizing a corporation is to limit the liability of owners and shareholders, and there is "a presumption of separateness between a corporation and its owners which is entitled to substantial weight." *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988), *cert. denied*, 488 U.S. 852, 102 L. Ed. 2d 109, 109 S. Ct. 136 (1988)(citations omitted). Corporations have a legally distinct existence from their shareholders which cannot be ignored. *Port Chester Elec. Construc. Corp. v. Atlas*, 40 N.Y.2d 652, 656, 389 N.Y.2d 327, 331 (1976); *Abbacor*, 2001 U.S. Dist. Lexis 13385 at *13 (shareholders not ordinarily liable for a corporation's acts); *See Musso v. Seiders*, 194 F.R.D. 43, 46 (D. Conn. 1999)("One cannot be held liable for the actions of the corporation simply by virtue of his status as a . . . shareholder"). It then follows that shareholders, acting in the interests of the corporation, will not be subject to personal jurisdiction by this Court, unless evidence is presented to justify otherwise. *See Cooper v. Parsky*, 1997 U.S. Dist. Lexis 4391, *40-42 (S.D.N.Y. Jan. 9, 1997), *aff'd sub nom. Cooper v. Gottlieb*, 2001 U.S. App. Lexis 10504 (2d Cir. May 17, 2001).

In the case *sub judice*, the Plaintiff must aver the facts necessary to extend this Court's jurisdiction over the Nevada Trusts as former shareholders of Bryco and the Complaint does not allege such necessary elements. Mere conclusory statements about the Nevada Trusts involvement with Bryco and the firearms business, as alleged throughout the Complaint, are not sufficient to satisfy the Plaintiff's pleading burden against the Nevada Trusts. *See Abbacor,* 2001 U.S. Dist. Lexis 13385 at *15.

     C.    **The Nevada Trusts Have Not Committed**
          **A Tort Outside Of New York**

C.P.L.R. §302(a)(3)(i) and (ii) permit jurisdiction over a defendant that commits a tortious act outside the State of New York. However, as the Second Circuit indicated, "the plaintiff must aver facts that if credited, would suffice to establish *all the requirements* under one of §302a's subsections, including the commission of a tort." *Banks Brussel Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 785 (2d. Cir. 1999)(emphasis added).

Again, the Plaintiff does not specifically allege any facts that the Nevada Trusts committed a tortious act, either in the State of New York or outside the State. In fact, any allegation of activity by any Defendants seems to stop in Ohio with the legal sale of the subject firearm to Angela Freeman, who is interestingly not named as a defendant in this case. *See Complaint*, ¶2. Specifically, none of the claims made in the Complaint allege that the manufacturing, distributing and/or selling of the handgun at issue involved the Nevada Trusts, nor that they engaged in any type of tortuous activity which would subject them to New York long-arm jurisdiction. "Courts consider the totality of the defendant's contacts with New York in determining whether jurisdiction exist." *Abbacor*, 2001 U.S. Dist. Lexis 13385 at *11. The Nevada Trusts have no contacts with New York in any manner and accordingly, the long-arm statute can not confer personal jurisdiction over them.

**III.    As The Nevada Trusts Have No Contacts With New York, An Exercise Of Jurisdiction By This Court Would Violate Federal Due Process.**

Assuming *arguendo* that jurisdiction by this Court over the Defendants is found to be appropriate under the New York long-arm statute, it would be a violation of due process to keep the Nevada Trusts in this action as there is no evidence of contacts sufficient to satisfy jurisdiction in New York. "The due process determination involves the assessment first as to whether the defendant has sufficient contacts with the forum state to justify the exercise of personal jurisdiction, and second, as to whether the assertion of jurisdiction is reasonable under the circumstances and

"comports with the 'traditional notions of fair play and substantial justice'". *Hamilton I*, 32 F. Supp. 2d. at 57 (citations omitted).

The factual arguments raised above regarding the lack of evidence of the Nevada Trusts's activities to establish personal jurisdiction under the long-arm statute apply equally to this due process analysis. There is no evidence to establish that the Nevada Trusts have committed a negligent act in or out of the State of New York, that they derive substantial revenue from products, or that they took any act to purposefully avail themselves to the benefits of New York.

To establish minimum contacts, the plaintiff must show that "'specific' jurisdiction exists through a showing that plaintiff's claims arise from or are related to a defendant's activities in the forum." *Hamilton I*, *Id.*; *See Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 126 (E.D.N.Y. 2000). The minimum contacts analysis is 'fact-intensive'". *Hamilton I*, *Id.* at 59, n.7. If the plaintiffs' factual evidence in support of a "minimum contacts" argument is weak, the defendant's threshold for establishing unreasonableness to defeat jurisdiction is lessened. *Simon*, 86 F. Supp. 2d at 126-127. In the instant action, there is no allegation or evidence that rises to the specific proof required of the Plaintiff to establish jurisdiction over The Nevada Trusts under the minimum contacts test.

Moreover, if the Nevada Trusts would be subject to this Court's jurisdiction, it would offend the "traditional notions of fair play and substantial justice" and would be unreasonable under the circumstances of this particular case. *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d. Cir. 1996)(citations omitted). In conducting a "reasonableness inquiry", the Court will consider five factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the

10

most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.*; *Hamilton I*, 32 F. Supp. 2d at 59.

The Nevada Trusts were established for the sole purpose of owning 20% of Bryco's shares each. *Ex. 1.,* ¶ 5. The Trusts had no interests or investments in any other corporate entities. *Id.* They have never owned, rented or leased any property, owned any assets nor transacted or conducted any business in the State of New York. *Id.,* ¶ 8. The Nevada Trusts have never even been involved with, either indirectly or directly, the manufacture, sale or distribution of firearms in New York, or in any other state or country except for owning the shares in Bryco from 1987 to 1998, which is prior to the shooting at issue in this case. *Id.,* ¶ 4,6,7. Furthermore, the lack of any solid allegations advanced by the Plaintiff, including the absence of minimum contacts, to link the Defendants to any of the allegations of negligence and public nuisance violates "fair play and substantial justice, warranting that this Court dismiss the Nevada Trusts from this action.

### V.    Conclusion

For the foregoing reasons, this Court lacks personal jurisdiction over The Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, and The Bradley A. Jennings Nevada Trust under New York law and an exercise of jurisdiction over The Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, and The Bradley A. Jennings Nevada Trust would violate due process. Accordingly, The Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, and The Bradley A. Jennings Nevada Trust respectfully request that this Court grant Defendants, The Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, The Bradley A. Jennings Nevada Trust, Motion to Dismiss and Memorandum of Law in Support of Their Motion to Dismiss for Lack of Personal Jurisdiction, and for such further relief as this Court may deem proper and necessary.

Dated: New York, New York
          November  15  , 2002

Respectfully submitted,

*Robert E. Scott Jr.*

Robert E.  Scott, Jr. (RES 9592)
Brittany L. Roberts (BLR 4744)
Semmes, Bowen & Semmes
250 W. Pratt Street
Baltimore, MD 21201
(410) 539-5040

and

Brian Heermance (BPH 6805)
Morrison, Mahoney & Miller, LLP
100 Maiden Lane - 22nd Floor
New York, NY 10038

Attorneys for Defendants The Rhonda D.
Jennings Nevada Trust, The Kimberly K.
Jennings Nevada Trust, and The Bradley A.
Jennings Nevada Trust

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this  15  day of November, 2002, a copy of Defendants, The
Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, and The Bradley A.
Jennings Nevada Trust, Memorandum of Law in Support of Their Motion to Dismiss for Lack of
Personal Jurisdiction was served electronically on: Elisa Barnes, 111 Broadway, 4th Floor, New York
City, New York 10006, Attorney for Plaintiff, and filed electronically to all counsel of record.

*Robert E. Scott Jr.*

Robert E. Scott, Jr.

(B0296560.WPD;1)

12

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOAN TRUMAN SMITH** | **CIVIL ACTION NO:** |
| | **CV 02 3029 (JBW)** |
| **V.** | |
| | **Honorable Jack B. Weinstein** |
| **BRYCO ARMS, Inc., et al.** | |

## ORDER

Upon consideration of Defendants, The Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, and The Bradley A. Jennings Nevada Trust, Motion to Dismiss for Lack of Personal Jurisdiction, and any Oppositions filed thereto, it is this _____ day of _____, 2002, hereby,

**ORDERED**, that Defendants, The Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, and The Bradley A. Jennings Nevada Trust, Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**.

_____
JUDGE JACK B. WEINSTEIN

# EXHIBIT 1
# AFFIDAVIT

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOAN TRUMAN SMITH** | **CIVIL ACTION NO:** |
| | **CV 02 3029 (JBW)** |
| **V.** | |
| | **Honorable Jack B. Weinstein** |
| **BRYCO ARMS, Inc., et al.** | |

**AFFIDAVIT OF JANICE JENNINGS**
**AS TRUSTEE OF THE RHONDA D. JENNINGS NEVADA TRUST,**
**THE KIMBERLY K. JENNINGS NEVADA TRUST,**
**AND THE BRADLEY A. JENNINGS NEVADA TRUST**

| | | |
|---|---|---|
| **STATE OF TEXAS** | ) | |
| | ) | **ss:** |
| **COUNTY OF DENTON** | ) | |

Before me, the undersigned authority, personally appeared Janice Jennings, who is known to me, and who after being duly sworn deposes and says:

I, JANICE JENNINGS, being over eighteen (18) years of age and competent to testify as a witness and having personal knowledge of the facts set forth below do herein make oath in due form as follows:

1.      I am the President of Bryco Arms, Inc. ("Bryco"), located in Costa Mesa, California, and I have served in this capacity since approximately 1990.   I am also the sole officer, director and stockholder of Bryco.  I am responsible for managing all of the financial affairs of Bryco.  My office as President is located at the Bryco plant at 380 Clinton Street in Costa Mesa, California.

2.      I am a citizen and resident of Copper Canyon, Texas and maintain a Bryco office near Dallas to conduct its business in my capacity as President.  When I am not at the principal

office of Bryco in Costa Mesa, California, I work from Bryco's office in Texas.  The office in Texas was opened in 2000.

3.  At approximately 12:30 p.m. on October 3, 2002, a private process served me with 15 copies of the Summons and Complaint at my residence in Copper Canyon, Texas.  The Summonses were directed to:  Janice Jennings, individually; Bryco Arms, Inc.; Bradley Jennings, individually; Kimberly Jennings, individually; and Rhonda Jennings, individually.  I asked the process server who he was serving and he stated "Janice Jennings, individually, and Bryco Arms, Inc."  I specifically told the process server that I could not accept service for Bruce Jennings, individually, or B.L. Jennings, Inc. ("BLJ") and he stated "I am not serving anyone other than you, individually, and Bryco."  Although the process server stated that he was only serving Janice Jennings, individually, and Bryco, I am accepting service, only in this case, on behalf of Bradley Jennings, Kimberly Jennings, and the Rhonda D. Jennings Nevada Trust, the Kimberly K. Jennings Nevada Trust, and the Bradley A. Jennings Nevada Trust.

4.  When Bryco was incorporated in 1987, it was owned 20% by Bryan Miller Nevada Trust, 20% by Janice Jennings, 20% by Rhonda D. Jennings Nevada Trust, 20% by Kimberly K. Jennings Nevada Trust and 20% by Bradley A. Jennings Nevada Trust.  Shortly after Bryco's incorporation, Bryan Miller died and Janice Jennings inherited his 20% ownership of Bryco giving her ownership of 40% of the Bryco shares.

5.  Rhonda D. Jennings Nevada Trust, the Kimberly K. Jennings Nevada Trust, and the Bradley A. Jennings Nevada Trust ("Nevada Trusts") were established for the sole purpose of owning 20% of Bryco's shares and have no interests or investments in any other corporate entities.  I was designated as the trustee of the Rhonda D. Jennings Nevada Trust, the Kimberly

2

K. Jennings Nevada Trust, and the Bradley A. Jennings Nevada Trust and Rhonda, Kimberly, and Bradley were the beneficiaries, respectively. The Nevada Trusts were set up to expire when the beneficiary of the trust reaches the age of thirty-five. Under this arrangement, the Rhonda D. Jennings Nevada Trust matured and expired a few months ago.

6.     On December 31, 1998, I purchased the Bryco shares held by the three Nevada Trusts and became the sole shareholder of Bryco, in full and proper accordance with Nevada law regarding private corporations, Nev. Rev. Stat. Ann. §78.115, *et seq.* (2001). *See Notes dated December 31, 1998, attached hereto as Ex. 1.* Since that time, the Nevada Trusts ceased to have any further involvement with Bryco, either directly or indirectly. None of my children have any ownership interest in Bryco, either directly or indirectly.

7.     The Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, and The Bradley A. Jennings Nevada Trust have never been involved with, either indirectly or directly, the manufacture, sale or distribution of firearms in New York, or in any other state or country. The Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, and The Bradley A. Jennings Nevada Trust have never been connected to, involved with or engaged in business with Defendants Bryco, BLJ, Jennings Firearms, Inc. of Nevada, Jennings Firearms, Inc. of California, Calwestco, or any other entity in the firearms business.

8.     The Nevada Trusts have never owned, rented or leased any property in the State of New York. The Nevada Trusts have never owned any assets nor transacted or conducted any business in the State of New York.

3

I declare under the penalty of perjury under the laws of the State of Texas that the contents of the foregoing affidavit are true and correct to the best of my knowledge.

Dated: Nov. 14, 02

Janice Jennings

Sworn to me this
14 day of NOV, 2002.          Date: 11/14/02

Notary Public

LESLIE K. SELF
Notary Public
STATE OF TEXAS
My Comm. Expires 03-25-2003

My commission expires on: 3/25/03

Smith.AffidavitofJaniceJenningsNevadatrusts.(B0301165)

4

# EXHIBIT 1 Attachment to Affidavit

NOTE - STRAIGHT

$20,000.00                    Stateline, Nevada                 December 31, 1998

At all times after date, for value received, the undersigned maker(s) promise to
pay to Rhonda Jennings Nevada Trust, or order at Stateline, Nevada, the sum of
twenty thousand dollars, with interest payable on the unpaid principal at the
rate of 6.0% per cent per annum, payable on demand.

Should interest not be so paid when due, it shall thereafter bear like interest
as the principal.  Should default be made in payment of interest when due, the
whole sum of principal and accrued interest shall become immediately due, without
notice, at the option of the holder of this note.  Interest after maturity will
accrue at the rate indicated above.  Principal and interest are payable in lawful
money of the United States.  Each maker will be jointly and severally liable and
consents to renewals, replacements and extensions of time for payment hereof
before, at or after maturity, and waives presentment, demand and protest and the
right to assert any statute of limitations.  A married person who signs this note
agrees that recourse may be had against his/her separate property for any
obligation contained herein.  If any action be instituted on this note, the
undersigned promise(s) to pay such sum as the Court may fix as attorney's fees.

_Janice Jennings_                      to Rhonda Jennings Nevada Trust

                                       10-8-99
                                       Pd.
                                       C/K 3321

        Balance of note    $20,000 00
        Interest to June 30     600.00
        INTEREST for 3rd Qo.    300.00
        Balance due        $ 20,600.00

              20, 900.00

NOTE - STRAIGHT

$20,000.00                    Stateline, Nevada              December 31, 1998

At all times after date, for value received, the undersigned maker(s) promise to
pay to Kimberly Jennings Nevada Trust, or order at Stateline, Nevada, the sum of
twenty thousand dollars, with interest payable on the unpaid principal at the
rate of 6.0% per cent per annum, payable on demand.

Should interest not be so paid when due, it shall thereafter bear like interest
as the principal.  Should default be made in payment of interest when due, the
whole sum of principal and accrued interest shall become immediately due, without
notice, at the option of the holder of this note.  Interest after maturity will
accrue at the rate indicated above.  Principal and interest are payable in lawful
money of the United States.  Each maker will be jointly and severally liable and
consents to renewals, replacements and extensions of time for payment hereof
before, at or after maturity, and waives presentment, demand and protest and the
right to assert any statute of limitations.  A married person who signs this note
agrees that recourse may be had against his/her separate property for any
obligation contained herein.   If any action be instituted on this note, the
undersigned promise(s) to pay such sum as the Court may fix as attorney's fees.

_Janice Jennings_                    to Kimberly Jennings Nevada Trust

                                              10-08-99
                                                 pd. 3222

Balance of Note              $ 20,000.00
Interest to June 30             600.00
IN. add. 100. per mo.           300.00
    Balance Due              $ 20,600.00

                              20.900.

NOTE - STRAIGHT

$20,000.00                     Stateline, Nevada                December 31, 1998

At all times after date, for value received, the undersigned maker(s) promise to
pay to Bradley Jennings Nevada Trust, or order at Stateline, Nevada, the sum of
twenty thousand dollars, with interest payable on the unpaid principal at the
rate of 6.0% per cent per annum, payable on demand.

Should interest not be so paid when due, it shall thereafter bear like interest
as the principal.   Should default be made in payment of interest when due, the
whole sum of principal and accrued interest shall become immediately due, without
notice, at the option of the holder of this note.  Interest after maturity will
accrue at the rate indicated above. Principal and interest are payable in lawful
money of the United States.  Each maker will be jointly and severally liable and
consents to renewals, replacements and extensions of time for payment hereof
before, at or after maturity, and waives presentment, demand and protest and the
right to assert any statute of limitations. A married person who signs this note
agrees that recourse may be had against his/her separate property for any
obligation contained herein.   If any action be instituted on this note, the
undersigned promise(s) to pay such sum as the Court may fix as attorney's fees.

_Janice Jennings_  — to Bradley Jennings Nevada Trust

Pd. 10-8-99
CK. 3221

BALANCE of Note            $ 20,000.00
Interest to June 30             600.00
IN. add. 100. per mo.           300.00
       BALANCE Due         $ 20,600.00

       20,900.00