## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

JOAN TRUMAN SMITH

V.

BRYCO ARMS, Inc., et al.

CIVIL ACTION NO:
CV 02 3029 (JBW)

Honorable Jack B. Weinstein

## DEFENDANT BRADLEY JENNINGS' NOTICE OF MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

PLEASE TAKE NOTICE that, upon the annexed Memorandum of Law in Support of his

Motion to Dismiss for Lack of Personal Jurisdiction, and Affidavit of Janice Jennings, together with

the attached exhibits, and all prior pleadings and proceedings had herein, Defendant Bradley

Jennings will move this Court, oral argument requested, before the Honorable Jack B. Weinstein,

United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York, 11201, on a date specified

by the Court, for an order pursuant to Rule 12(b) of the Federal Rules of Civil Procedure dismissing

Plaintiff's claims as against Defendant Bradley Jennings for lack of personal jurisdiction.

Dated: New York, New York
        November 15th, 2002

Respectfully submitted,

Robert E. Scott, Jr.

Robert E.  Scott, Jr. (RS 9592)
Lauren E. Lacey (LL2999)
Brittany L. Roberts (BR 4744)
Semmes, Bowen & Semmes
250 W. Pratt Street
Baltimore, MD 21201
(410) 539-5040

and

Brian Heermance (BH 6805)
Morrison, Mahoney & Miller, LLP
100 Maiden Lane - 22nd Floor
New York, NY 10038

Attorneys for Defendant Bradley Jennings

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**JOAN TRUMAN SMITH**

**V.**

**BRYCO ARMS, Inc., et al.**

**CIVIL ACTION NO:
CV 02 3029 (JBW)**

**Honorable Jack B. Weinstein**

## DEFENDANT BRADLEY JENNINGS' MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Bradley Jennings by and through his undersigned attorneys, hereby submits his Memorandum of Law in Support of his Motion to Dismiss, pursuant to the Federal Rules of Civil Procedure 12(b)(5), for lack of personal jurisdiction, and in support states:

### I.  Statement Of Facts

This suit was filed by the Plaintiff alleging negligence and public nuisance against various defendants, including Bradley Jennings, all the members of the Jennings family, Bryco Arms, Inc. ("Bryco"), and B. L. Jennings, Inc. ("BLJ"), among others, related to a shooting that occurred on May 25, 2000.  *See* Complaint, ¶¶1, 10-24.

At approximately 12:30 p.m. on October 3, 2002, a private process served Janice Jennings with 15 copies of the Summons and Complaint at her residence in Copper Canyon, Texas.  *See Affidavit of Janice Jennings as Trustee of The Rhonda D. Jennings Nevada Trust, the Kimberly K. Jennings Nevada Trust, and the Bradley A. Jennings Nevada Trust, attached hereto as Exhibit 1,* ¶3. The Summonses were directed to: Janice Jennings, individually; Bryco Arms, Inc.; Bradley Jennings, individually; Kimberly Jennings, individually; and Rhonda Jennings, individually.  *Id.* Janice Jennings asked the process server who he was serving and he stated "Janice Jennings,

individually, and Bryco Arms, Inc."[1]  *Id.*  Janice Jennings specifically told the process server that she could not accept service for Bruce Jennings, individually, or B.L. Jennings, Inc. and he stated "I am not serving anyone other than you, individually, and Bryco."  *Id.*  Although the process server stated that he was only serving Janice Jennings, individually, and Bryco Arms, Inc., Janice Jennings, Bradley Jennings' mother, has agreed to accept service, only in this case, on behalf of Bradley Jennings, Kimberly Jennings, the Rhonda D. Jennings Nevada Trust, the Bradley A. Jennings Nevada Trust, and the Kimberly K. Jennings Nevada Trust.[2]  *Id.; See Affidavit of Bradley Jennings attached hereto as Exhibit 3,* ¶1.

Bradley Jennings has never been involved with, either indirectly or directly, the manufacture, sale or distribution of firearms.  *Ex.* 3, ¶2.  He is not, nor has he ever been an officer, director, shareholder, agent, representative or employee of Defendants Bryco, BLJ, Jennings Firearms, Inc. of Nevada, Jennings Firearms, Inc. of California, Calwestco, or any other entity involved or engaged in the firearms business in any capacity.  *Id.,* ¶3.  Furthermore, Bradley Jennings has never been engaged in the firearms business in his personal capacity in any manner or at any time.  *Id.,* ¶2.

As to any contacts with the State of New York, he has never owned, rented or leased any property in the State.  *Id.,* ¶4.  He has never owned any assets in the State of New York.  *Id.*  He has never had a checking, savings or any other type of account with a bank in the State of New York, nor has he ever worked in the State of New York.  *Id.*  He has never transacted or conducted any business in, nor ever traveled to, the State of New York.  *Id.,* ¶¶4-5.  As Bradley Jennings has no

---

[1] Bryco Arms, Inc. was served on June 28, 2002 and answered the Complaint on July 18, 2002.  Rhonda Jennings was served on September 12, 2002 at her home in Las Vegas, Nevada and filed a Motion to Dismiss for Lack of Personal Jurisdiction on October 2, 2002.

[2] Similar Motions to Dismiss for Lack of Personal Jurisdiction are being filed for each of the Defendants for which Janice Jennings accepted service of process.

contacts with New York in any manner, there is no basis for personal jurisdiction by this Court.

## II.   Lack Of Personal Jurisdiction

### A.   The Burden Of Proving That This Court Has Personal Jurisdiction Over Bradley Jennings Lies With The Plaintiff

This action has been filed by the Plaintiff based upon proper venue and jurisdiction pursuant to 28 U.S.C. §1391, for business contacts with the State of New York, and 28 U.S.C. §1332, for diversity of citizenship. *See* Complaint, ¶¶7,8. "Personal jurisdiction over a defendant in a diversity action is determined by reference to the law of the jurisdiction in which the court sits", and accordingly, the application of New York state law to the instant case is appropriate. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 56 (2d Cir. 1985), *citing United States v. First National City Bank*, 379 U.S. 378, 381-82, 13 L. Ed. 2d 365, 85 S. Ct. 528 (1965); *Arrowsmith v. United Press Int'l.*, 320 F.2d 219, 223 (2d Cir. 1963)(en banc). It is the plaintiff's burden to establish jurisdiction by a preponderance of the evidence. *Hoffritz,* 763 F.2d at 56. The nature of the plaintiff's obligation varies depending on the procedural posture of the litigation. . . "only a *prima facie* showing is necessary to defeat a jurisdiction testing motion before discovery". *Ball v. Metallurgie Hoboker-Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir. 1990), *cert. denied*, 498 U.S. 854, 112 L. Ed. 2d 116, 111 S. Ct. 150 (1990). However, "conclusory allegations without an elucidation of supporting facts will not suffice to meet Plaintiff's burden." *Abbacor, Inc. v. Miller, et al.*, 2001 U.S. Dist. Lexis 13385, *7 (S.D.N.Y. Aug. 31, 2001).

In determining whether personal jurisdiction exists in this diversity action, the court will inquire whether Bradley Jennings is subject to service of process under the New York long-arm statute, specifically C.P.L.R.§302(a), and whether the jurisdiction is in accordance with the constitutional requirements of federal due process. *Hamilton v. Accu-tek*, 32 F. Supp. 2d 47, 55

3

(E.D.N.Y. 1998), *vacated sub nom. Hamilton v. Beretta, U.S.A. Corp.*, 222 F.3d 36 (2d Cir. 2000)

("*Hamilton I*"); *Savin v. Ranier,* 898 F.2d 304, 306 (2d Cir. 1990); *See Ball*, 902 F.2d at 198.

### B.    There Is No Basis For Personal Jurisdiction By This Court Under The New York Long-Arm Statute

To assert jurisdiction in this action under C.P.L.R. §302(a)(3) of the New York long-arm

statute, the Plaintiff must prove that Bradley Jennings:

> committed a tortuous act outside New York which caused injury to person or property inside New York and the defendant (i) regularly conducts or solicits business in New York or derives substantial revenue from goods used or services and goods sold in New York, or (ii) the defendant reasonably expects the act to have consequences in New York and to derive substantial revenue from interstate commerce.

*Cortland Racquet Club, Inc. v. Oy Saunatec, Ltd.*, 978 F. Supp. 520, 523 (E.D.N.Y. 1997). *See*

*Hamilton I* at 55; *Schaadt v. T.W. Kutter, Inc.*, 169 A.D.2d 969, 969, 564 N.Y.S.2d 865, 866 (1991).

Under C.P.L.R. §302(a)(ii), known as the "foreseeability requirement", "there must be an affirmative

or purposeful act invoking the benefits or protection of New York law." *Hamilton I* at 56; *Schaadt*,

169 A.D. at 970, 564 N.Y.S.2d at 866; *Cortland*, 978 F. Supp. at 523. "In other words, mere

foreseeability of in-state consequence and failure to avert that consequence is not sufficient to

establish personal jurisdiction under New York's long-arm statute." *Cortland*, 978 F. Supp. at 523;

*See Schaadt*, 169 A.D.2d at 969, 564 N.Y.S.2d; *See World-Wide Volkswagon Corp. v. Woodson*, 444

U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).  "The test of whether a defendant expects or

should reasonably expect his act to have consequence within the State is an <u>objective</u>, rather than

subjective one".  *Cortland*, 978 F. Supp. at 523 (emphasis added).

### i. No Basis For Personal Jurisdiction Over Bradley Jennings Individually

The facts in this matter do not support that Bradley Jennings has committed an act or engaged in conduct to be subject to jurisdiction under C.P.L.R. §302(a)(i) or (ii). Bradley Jennings has not engaged in any conduct that would subject him to jurisdiction under New York's long arm statute. He has never transacted or conducted business in, nor traveled to, the State of New York for any purpose. *Ex. 3,* ¶¶4-5. He has not had any personal contact with the State of New York for any reason. *Id.*

Furthermore, Bradley Jennings has never been involved with, either indirectly or directly, the manufacture, sale or distribution of firearms in New York, or in any other state or country. *Id.*, ¶2. He is not, nor has he ever been an officer, director, shareholder, agent, representative or employee of any firearm manufacturer or distributor subject to this suit, nor any other firearm entity not named in this suit. *Id.*, ¶¶2-3. Bradley Jennings has never been engaged in the firearms business in his personal capacity in any manner or at any time. *Id.*, ¶2. Plaintiff has made no allegations that Bradley Jennings committed any specific acts to subject him to jurisdiction in New York or, even simply, that the handgun recovered in New York from the shooting can be connected in any manner to Bradley Jennings personally. Therefore, there is no basis for personal jurisdiction by this Court over Bradley Jennings.

### ii. No Basis For Personal Jurisdiction Over Bradley Jennings As The Beneficiary Of The Bradley A. Jennings Nevada Trust

Plaintiff suggests that the use of Bradley Jennings' name to set up a trust, the Bradley A. Jennings Nevada Trust, to act as a shareholder during the initial formation of Bryco, somehow makes him responsible for or part of the business of the manufacturing, sale and/or distribution of handguns

5

by many of the Defendants named in this case, including Bryco, BLJ, Jennings Firearms, Inc. of Nevada, Jennings Firearms, Inc. of California and Calwestco. *See* Complaint, ¶¶17, 20. However, the establishment of the Bradley A. Jennings Nevada Trust did not involve Bradley Jennings personally in the operation, manufacture, sale and/or distribution of firearms in any way.

When Bryco was incorporated in 1987, the Bradley A. Jennings Nevada Trust was established for the sole purpose of owning 20% of Bryco's shares. *Ex.* 1, ¶¶4-5. Janice Jennings was the trustee of the Bradley A. Jennings Nevada Trust and Bradley Jennings was the beneficiary. *Id.*, ¶5. The remaining Bryco shares were owned equally at 20% by the Bryan Miller Nevada Trust, Janice Jennings, the Kimberly K. Jennings Nevada Trust, and the Rhonda D. Jennings Nevada Trust.[3] *Id.*, ¶4. The Nevada Trusts existed only to own the Bryco shares, and have no interests or investments in any other corporate entities. *Id.*, ¶¶5-8. The Nevada Trusts were set up to expire when the beneficiary of the Trust reaches the age of thirty-five. *Id.*, ¶5.

On December 31, 1998, the shares held by the Bradley A. Jennings Nevada Trusts, the Kimberly K. Jennings Nevada Trust and the Rhonda D. Jennings Nevada Trust were purchased by Janice Jennings and she became the sole shareholder of Bryco, leaving the Trusts with no shareholder interest in Bryco. *Ex.* 1, ¶5. Since that time, the Bradley A. Jennings Nevada Trust, with Bradley Jennings as the beneficiary, ceased to have any further involvement with Bryco, either directly or indirectly. *Id.*, ¶6.

A corporation is an legal entity, endowed with a separate and distinct existence from its shareholders. The purpose for organizing a corporation is to limit the liability of owners and shareholders, and there is "a presumption of separateness between a corporation and its owners

_____

[3]   Shortly after Bryco's incorporation, Bryan Miller died and Janice Jennings inherited his 20% ownership of Bryco giving her ownership of 40% of Bryco shares. *Ex.* 1, ¶7.

which is entitled to substantial weight." *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d

Cir. 1988), *cert. denied*, 488 U.S. 852, 102 L. Ed. 2d 109, 109 S. Ct. 136 (1988)(citations omitted).

Corporations have a legally distinct existence from their shareholders which cannot be ignored. *Port*

*Chester Elec. Construc. Corp. v. Atlas*, 40 N.Y.2d 652, 656, 389 N.Y.2d 327, 331 (1976); *Abbacor*,

2001 U.S. Dist. Lexis 13385 at *13 (shareholders not ordinarily liable for a corporation's acts or

breach); *See Musso v. Seiders*, 194 F.R.D. 43, 46 (D. Conn. 1999)("One cannot be held liable for the

actions of the corporation simply by virtue of his status as a . . . shareholder"). It then follows that

shareholders, acting in the interests of the corporation, will not be subject to personal jurisdiction

by this Court, unless evidence is presented to justify otherwise. *See Cooper v. Parsky*, 1997 U.S.

Dist. Lexis 4391, *40-42 (S.D.N.Y. Jan. 9, 1997), *aff'd sub nom. Cooper v. Gottlieb*, 2001 U.S. App.

Lexis 10504 (2d Cir. May 17, 2001).

The allegations raised against Bradley Jennings, in his capacity as a beneficiary of the

Bradley A. Jennings Nevada Trust, are even more guarded by legal protections than those afforded

to shareholders of a corporation. The Bradley A. Jennings Nevada Trust was a shareholder of Bryco

with Janice Jennings as the trustee. A trustee can generally represent the interests of the beneficiary

and it is not necessary that the beneficiary be named in a suit that is brought by a third party against

the trust when the trustee can serve to protect the interests of the beneficiary. *See Harrison v. Grobe*,

135 F.R.D. 72, 1991 U.S. Dist. Lexis 3337, *12-13 (S.D.N.Y. Mar. 20, 1991)(withdrawn from

publication). However, the Plaintiff must aver the facts necessary to extend this Court's jurisdiction

over the Trust, here the Bradley A. Jennings Nevada Trust as a former shareholder of Bryco, and the

Complaint does not allege the necessary facts. Mere conclusory statements about Bradley Jennings'

involvement with the trust and the firearms business, as alleged throughout the Complaint, are not

sufficient to satisfy the Plaintiff's pleading burden against the Bradley Jennings as the beneficiary

of the Bradley A. Jennings Nevada Trust or against Bradley Jennings in any capacity. *See Abbacor,*

2001 U.S. Dist. Lexis 13385 at *15.

### iii.    No Basis For Personal Jurisdiction Over Bradley Jennings As The Beneficiary Of The Bradley A. Jennings California Trust

The Plaintiff also improperly alleges that the use of Bradley Jennings name to establish a

trust, the Bradley A. Jennings California Trust, designated as a partner in RKB Investments ("RKB")

connects him with the operation and control of the manufacturing, sale and/or distribution of

firearms by Bryco, BLJ, Jennings Firearms, Inc. of Nevada, Jennings Firearms, Inc. of California

and Calwestco. *See* Complaint, ¶¶17, 21. RKB is a general partnership set up under the laws of

California on August 25, 1987, naming as partners three trusts, the Rhonda D. Jennings California

Trust, the Kimberly K. Jennings California Trust and the Bradley A. Jennings California Trust. The

co-trustees were Bruce Jennings and Janice Jennings. *See Affidavit of Janice Jennings as Trustee*

*of The Rhonda D. Jennings California Trust, the Kimberly K. Jennings California Trust, and the*

*Bradley A. Jennings California Trust, attached hereto as Exhibit 2,* ¶2. The principal asset of each

Trust was the partnership in RKB Investments. *Id.* Bradley Jennings was the beneficiary of the

Bradley A. Jennings California Trust. *Id.*

RKB was established for the purpose of buying, selling, leasing and dealing in real estate,

and, at no time, has it ever been involved in any aspects of the firearm business. *Id.,* ¶3. RKB's only

connection with Bryco was that RKB served as Bryco's landlord by leasing property and other

existing structures to Bryco for the purposes of housing Bryco's corporate offices and manufacturing

operation. *Id.* RKB no longer owns or leases the above mentioned property to Bryco as the property

was sold by RKB in approximately mid-October, 2002. *Id.* Furthermore, RKB no longer owns

property in the State of California and has never transacted or conducted business, or owned

property, in Nevada, New York or any other state. *Id.,* ¶4. Specifically, it has never owned, directly or indirectly, any interest in Bryco, BLJ or any other corporate entity or interest. *Id.,* ¶3. The Trusts comprising the general partnership of RKB, the Rhonda D. Jennings California Trust, the Kimberly K. Jennings California Trust and the Bradley A. Jennings California Trust were set up to expire when the beneficiary of the Trust reaches the age of twenty-five. *Id.,* ¶2.

The legal arguments raised above with regard to the Plaintiff's inability to subject Bradley Jennings to personal jurisdiction for his connections to the Bradley A. Jennings Nevada Trust are equally applicable to Bradley Jennings status as the beneficiary of the Bradley A. Jennings California Trust. Such superficial, cursory claims about Bradley Jennings designation as a beneficiary of the trust, with nothing more to connect him to any allegation related to the Defendants in this case, does not rise to a "purposeful act invoking the benefits of New York law" to satisfy C.P.L.R. §302(a)(i) or (ii). *See Hamilton I* at 55-56.

### C.   Bradley Jennings Has Not Committed A Tort Outside Of New York

C.P.L.R. §302(a)(3)(i) and (ii) permit jurisdiction over a defendant that commits a tortuous act outside the State of New York. However, as the Second Circuit indicated, "the plaintiff must aver facts that if credited, would suffice to establish *all the requirements* under one of §302a's subsections, including the commission of a tort." *Banks Brussel Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 785 (2d Cir. 1999), *vacated*, 2002 U.S. App. Lexis 19635 (2d Cir. Sept. 20, 2002)(emphasis added).

Again, the Plaintiff does not specifically allege any facts that Bradley Jennings committed a tortuous act, either in the State of New York or outside the State.   In fact, any allegation of activity by all Defendants seems to stop in Ohio with the legal sale of the subject firearm to Angela

Freeman, who is interestingly not named as a defendant in this case.  *See* Complaint, ¶2. Specifically, none of the claims made in the Complaint allege that the manufacturing, distributing and/or selling of the handgun at issue involved Bradley Jennings personally, nor that he engaged in any type of tortuous activity which would subject him to New York long arm jurisdiction.  "Courts consider the totality of the defendant's contacts with New York in determining whether jurisdiction exist." *Abbacor*, 2001 U.S. Dist. Lexis 13385 at *11.  Bradley Jennings has no contacts with New York in any manner and accordingly, the long-arm statute can not confer personal jurisdiction over her.

### III.    As Bradley Jennings Has No Contacts With New York, An Exercise Of Jurisdiction By This Court Would Violate Federal Due Process.

Assuming *arguendo* that jurisdiction by this Court over Bradley Jennings is found to be appropriate under the New York long-arm statute, it would be a violation of due process to keep him in this action as there is no evidence of contacts sufficient to satisfy jurisdiction in New York.  "The due process determination involves the assessment first as to whether the defendant has sufficient contacts with the forum state to justify the exercise of personal jurisdiction, and second, as to whether the assertion of jurisdiction is reasonable under the circumstances and "comports with the 'traditional notions of fair play and substantial justice'". *Hamilton I*, 32 F. Supp. 2d at 57.

The factual arguments raised above regarding the lack of evidence as to Bradley Jennings' activities with New York to establish personal jurisdiction apply equally to this due process analysis. There is simply no evidence to establish that he has committed an act, either negligent or not, in or out of the State of New York, that he conducts or solicits business in New York, or that he took any act to purposefully avail himself of the benefits of New York.

To establish minimum contacts, the plaintiff must show that "'specific' jurisdiction exists through a showing that plaintiff's claims arise from or are related to a defendant's activities in the forum." *Id.*; *See, Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 126 (E.D.N.Y. 2000). The minimum contacts analysis is 'fact-intensive'". *Hamilton I*, 32 F. Supp. 2d at 59, n.7. If the plaintiff's factual evidence in support of a "minimum contacts" argument is weak, the defendant's threshold for establishing unreasonableness to defeat jurisdiction is lessened. *Simon*, 86 F. Supp. 2d at 126-127. In the instant action, there is not a scintilla of evidence that rises to the specific proof, let alone any proof, that is required of the Plaintiff to establish that Bradley Jennings had minimum contacts with New York.

Moreover, if Bradley Jennings would be subject to this Court's jurisdiction, it would offend the "traditional notions of fair play and substantial justice" and would be unreasonable under the circumstances of this particular case. *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996), *cert. denied*, 519 U.S. 1007, 136 L. Ed. 2d 398, 117 S. Ct. 508 (1996)(citations omitted). In conducting a "reasonableness inquiry", the Court will consider five factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.*; *Hamilton I*, 32 F. Supp. 2d at 59.

Bradley Jennings resides in Copper Canyon, Texas, not in New York. *Ex.3*, ¶1. It would be burdensome, inconvenient and unreasonable for Bradley Jennings to defend himself in New York, when he resides in Texas, and does not travel, and has not traveled, to New York for any purpose or at any time. *Id.*, ¶¶1,5. The lack of any solid allegations advanced by the Plaintiff, including the

absence of minimum contacts, to link Bradley Jennings to any of the allegations of negligence and public nuisance violates "fair play and substantial justice", warranting that this Court dismiss Bradley Jennings from this action.

**IV.     Conclusion**

For the foregoing reasons, this Court lacks personal jurisdiction over Bradley Jennings, individually, or as the beneficiary of the Bradley A. Jennings Nevada Trust or the Bradley A. Jennings California Trust, under New York law and an exercise of jurisdiction over Bradley Jennings would violate due process. Accordingly, Bradley Jennings respectfully requests that this Court grant his Motion to Dismiss and Memorandum of Law in Support of His Motion to Dismiss for Lack of Personal Jurisdiction, and for such further relief as this Court may deem proper and necessary.

Dated: New York, New York
           November 15 , 2002

                              Robert E Scott Jr. P
                              Robert E.  Scott, Jr. (RS 9592)
                              Lauren E. Lacey (LL2999)
                              Brittany L. Roberts (BR 4744)
                              Semmes, Bowen & Semmes
                              250 W. Pratt Street
                              Baltimore, MD 21201
                              (410) 539-5040

                              and

                              Brian Heermance (BH 6805)
                              Morrison, Mahoney & Miller, LLP
                              100 Maiden Lane - 22nd Floor
                              New York, NY 10038

                              Attorneys for Defendant Bradley Jennings

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ____ day of November, 2002, a copy of Defendant Bradley Jennings' Memorandum of Law in Support of His Motion to Dismiss for Lack of Personal Jurisdiction was mailed, first-class, postage prepaid and filed electronically to: Elisa Barnes, 111 Broadway, 4th Floor, New York City, New York 10006, Attorney for Plaintiff, and filed electronically to all counsel of record.

Robert E. Scott, Jr.

(B0296085.WPD;1) 20147-17

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOAN TRUMAN SMITH** | **CIVIL ACTION NO:** |
| | **CV 02 3029 (JBW)** |
| **V.** | |
| | **Honorable Jack B. Weinstein** |
| **BRYCO ARMS, Inc., et al.** | |

## ORDER

Upon consideration of Defendant Bradley Jennings' Motion to Dismiss for Lack of Personal

Jurisdiction, and any Oppositions filed thereto, it is this _____ day of _____,

2002, hereby,

**ORDERED**, that Defendant Bradley Jennings' Motion to Dismiss for Lack of Personal

Jurisdiction is **GRANTED**.

_____
JUDGE JACK B. WEINSTEIN

# EXHIBIT 1
# AFFIDAVIT

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

JOAN TRUMAN SMITH

V.

BRYCO ARMS, Inc., et al.

CIVIL ACTION NO:
CV 02 3029 (JBW)

Honorable Jack B. Weinstein

## AFFIDAVIT OF JANICE JENNINGS
### AS TRUSTEE OF THE RHONDA D. JENNINGS NEVADA TRUST, THE KIMBERLY K. JENNINGS NEVADA TRUST, AND THE BRADLEY A. JENNINGS NEVADA TRUST

| | |
|---|---|
| STATE OF TEXAS | ) |
| | ) ss: |
| COUNTY OF DENTON | ) |

Before me, the undersigned authority, personally appeared Janice Jennings, who is known to me, and who after being duly sworn deposes and says:

I, JANICE JENNINGS, being over eighteen (18) years of age and competent to testify as a witness and having personal knowledge of the facts set forth below do herein make oath in due form as follows:

1.      I am the President of Bryco Arms, Inc. ("Bryco"), located in Costa Mesa, California, and I have served in this capacity since approximately 1990.   I am also the sole officer, director and stockholder of Bryco.  I am responsible for managing all of the financial affairs of Bryco.  My office as President is located at the Bryco plant at 380 Clinton Street in Costa Mesa, California.

2.      I am a citizen and resident of Copper Canyon, Texas and maintain a Bryco office near Dallas to conduct its business in my capacity as President.  When I am not at the principal

office of Bryco in Costa Mesa, California, I work from Bryco's office in Texas.  The office in Texas was opened in 2000.

3.      At approximately 12:30 p.m. on October 3, 2002, a private process served me with 15 copies of the Summons and Complaint at my residence in Copper Canyon, Texas.  The Summonses were directed to:  Janice Jennings, individually; Bryco Arms, Inc.; Bradley Jennings, individually; Kimberly Jennings, individually; and Rhonda Jennings, individually.  I asked the process server who he was serving and he stated "Janice Jennings, individually, and Bryco Arms, Inc."  I specifically told the process server that I could not accept service for Bruce Jennings, individually, or B.L. Jennings, Inc. ("BLJ") and he stated "I am not serving anyone other than you, individually, and Bryco."  Although the process server stated that he was only serving Janice Jennings, individually, and Bryco, I am accepting service, only in this case, on behalf of Bradley Jennings, Kimberly Jennings, and the Rhonda D. Jennings Nevada Trust, the Kimberly K. Jennings Nevada Trust, and the Bradley A. Jennings Nevada Trust.

4.      When Bryco was incorporated in 1987, it was owned 20% by Bryan Miller Nevada Trust, 20% by Janice Jennings, 20% by Rhonda D. Jennings Nevada Trust, 20% by Kimberly K. Jennings Nevada Trust and 20% by Bradley A. Jennings Nevada Trust.  Shortly after Bryco's incorporation, Bryan Miller died and I inherited his 20% ownership of Bryco giving me ownership of 40% of the Bryco shares.

5.      Rhonda D. Jennings Nevada Trust, the Kimberly K. Jennings Nevada Trust, and the Bradley A. Jennings Nevada Trust ("Nevada Trusts") were established for the sole purpose of owning 20% of Bryco's shares and have no interests or investments in any other corporate entities.  I was designated as the trustee of the Rhonda D. Jennings Nevada Trust, the Kimberly

2

K. Jennings Nevada Trust, and the Bradley A. Jennings Nevada Trust and Rhonda, Kimberly,

and Bradley were the beneficiaries, respectively.  The Nevada Trusts were set up to expire when

the beneficiary of the trust reaches the age of thirty-five.  Under this arrangement, the Rhonda D.

Jennings Nevada Trust matured and expired a few months ago.

6.     On December 31, 1998, I purchased the Bryco shares held by the three Nevada

Trusts and became the sole shareholder of Bryco, in full and proper accordance with Nevada law

regarding private corporations, Nev. Rev. Stat. Ann. §78.115, *et seq.* (2001).  *See Notes dated*

*December 31, 1998, attached hereto as Ex. 1.*  Since that time, the Nevada Trusts ceased to have

any further involvement with Bryco, either directly or indirectly.  None of my children have any

ownership interest in Bryco, either directly or indirectly.

7.     The Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust,

and The Bradley A. Jennings Nevada Trust have never been involved with, either indirectly or

directly, the manufacture, sale or distribution of firearms in New York, or in any other state or

country. The Rhonda D. Jennings Nevada Trust, The Kimberly K. Jennings Nevada Trust, and

The Bradley A. Jennings Nevada Trust have never been connected to, involved with or engaged

in business with Defendants Bryco, BLJ, Jennings Firearms, Inc. of Nevada, Jennings Firearms,

Inc. of California, Calwestco, or any other entity in the firearms business.

8.     The Nevada Trusts have never owned, rented or leased any property in the State

of New York.  The Nevada Trusts have never owned any assets nor transacted or conducted any

business in the State of New York.

3

I declare under the penalty of perjury under the laws of the State of Texas that the contents of the foregoing affidavit are true and correct to the best of my knowledge.

Dated: Nov. 14, 02

Janice Jennings

Sworn to me this
14 day of Nov., 2002.          Date: 11/14/02

Notary Public

My commission expires on: 3/25/03

LESLIE K. SELF
Notary Public
STATE OF TEXAS
My Comm. Expires 03-25-2003

_____
Smith.AffidavitofJaniceJenningsNevadatrusts.(B0301165)

4

# EXHIBIT 1 Attachment to Affidavit

NOTE – STRAIGHT

$20,000.00                          Stateline, Nevada          December 31, 1998

At all times after date, for value received, the undersigned maker(s) promise to
pay to Rhonda Jennings Nevada Trust, or order at Stateline, Nevada, the sum of
twenty thousand dollars, with interest payable on the unpaid principal at the
rate of 6.0% per cent per annum, payable on demand.

Should interest not be so paid when due, it shall thereafter bear like interest
as the principal.  Should default be made in payment of interest when due, the
whole sum of principal and accrued interest shall become immediately due, without
notice, at the option of the holder of this note.  Interest after maturity will
accrue at the rate indicated above.  Principal and interest are payable in lawful
money of the United States.  Each maker will be jointly and severally liable and
consents to renewals, replacements and extensions of time for payment hereof
before, at or after maturity, and waives presentment, demand and protest and the
right to assert any statute of limitations.  A married person who signs this note
agrees that recourse may be had against his/her separate property for any
obligation contained herein.  If any action be instituted on this note, the
undersigned promise(s) to pay such sum as the Court may fix as attorney's fees.


_Janice Jennings_                    to Rhonda Jennings Nevada Trust


                                              10-3-99
                                              Pd. CK 3221

        Balance of note    $ 20,000.00
        Interest to June 30      600.00
        INTEREST for 3 mo.       300.00
        Balance due        $ 20,600.00

              20,900.00

NOTE - STRAIGHT

$20,000.00                    Stateline, Nevada               December 31, 1998

At all times after date, for value received, the undersigned maker(s) promise to
pay to Kimberly Jennings Nevada Trust, or order at Stateline, Nevada, the sum of
twenty thousand dollars, with interest payable on the unpaid principal at the
rate of 6.0% per cent per annum, payable on demand.

Should interest not be so paid when due, it shall thereafter bear like interest
as the principal.  Should default be made in payment of interest when due, the
whole sum of principal and accrued interest shall become immediately due, without
notice, at the option of the holder of this note.  Interest after maturity will
accrue at the rate indicated above.  Principal and interest are payable in lawful
money of the United States.  Each maker will be jointly and severally liable and
consents to renewals, replacements and extensions of time for payment hereof
before, at or after maturity, and waives presentment, demand and protest and the
right to assert any statute of limitations.  A married person who signs this note
agrees that recourse may be had against his/her separate property for any
obligation contained herein.  If any action be instituted on this note, the
undersigned promise(s) to pay such sum as the Court may fix as attorney's fees.

_Janice Jennings_                  to Kimberly Jennings Nevada Trust

                                        10-8-99
                                             pd. 3222

Balance of Note          $ 20,000.00
Interest to June 30          600.00
IN. add. 100. pr mo.         300.00
Balance Due              $ 20,600.00

                          20,900.

NOTE - STRAIGHT

$20,000.00                    Stateline, Nevada                December 31, 1998

At all times after date, for value received, the undersigned maker(s) promise to pay to Bradley Jennings Nevada Trust, or order at Stateline, Nevada, the sum of twenty thousand dollars, with interest payable on the unpaid principal at the rate of 6.0% per cent per annum, payable on demand.

Should interest not be so paid when due, it shall thereafter bear like interest as the principal.  Should default be made in payment of interest when due, the whole sum of principal and accrued interest shall become immediately due, without notice, at the option of the holder of this note.  Interest after maturity will accrue at the rate indicated above. Principal and interest are payable in lawful money of the United States.  Each maker will be jointly and severally liable and consents to renewals, replacements and extensions of time for payment hereof before, at or after maturity, and waives presentment, demand and protest and the right to assert any statute of limitations. A married person who signs this note agrees that recourse may be had against his/her separate property for any obligation contained herein.  If any action be instituted on this note, the undersigned promise(s) to pay such sum as the Court may fix as attorney's fees.

*Janice Jennings*        to Bradley Jennings Nevada Trust

Pd. 10-8-99
Ck. 3221

BALANCE of Note        $ 20,000.00
Interest to June 30         600.00
IN. add. 100. per mo.       300.00
    BALANCE Due        $ 20,600.00

    20,900.00

# EXHIBIT 2
# Affidavit

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

JOAN TRUMAN SMITH

V.

BRYCO ARMS, Inc., et al.

CIVIL ACTION NO:
CV 02 3029 (JBW)

Honorable Jack B. Weinstein

<u>**AFFIDAVIT OF JANICE JENNINGS**
**AS TRUSTEE OF THE RHONDA D. JENNINGS CALIFORNIA TRUST,**
**THE KIMBERLEY K. JENNINGS CALIFORNIA TRUST,**
**AND THE BRADLEY A. JENNINGS CALIFORNIA TRUST**</u>

| | | |
|---|---|---|
| STATE OF TEXAS | ) | |
| | ) | ss: |
| COUNTY OF DENTON | ) | |

Before me, the undersigned authority, personally appeared Janice Jennings, who is known to me, and who after being duly sworn deposes and says:

I, JANICE JENNINGS, being over eighteen (18) years of age and competent to testify as a witness and having personal knowledge of the facts set forth below do herein make oath in due form as follows:

1.     I am the co-trustee of the Rhonda D. Jennings California Trust, the Kimberley K. Jennings California Trust, and the Bradley A. Jennings California Trust ("California Trusts"). *See General Partnership Agreement of RKB Investments, dated August 25, 1987, attached hereto as Ex. 1.* Bruce Jennings is also a trustee of the three California Trusts.

2.     RKB Investments is a general partnership that was set up under the laws of California on August 25, 1987, naming as partners the three California Trusts, the Rhonda D. Jennings California Trust, the Kimberley K. Jennings California Trust, and the Bradley A. Jennings California Trust and Rhonda, Kimberly, and Bradley were the sole beneficiaries of the

California Trusts, respectively. *See Ex. 1.* The principal asset of each California Trust was the partnership in RKB Investments. The California Trusts comprising the general partnership of RKB Investments were set up to expire when the beneficiary of the California Trust reaches the age of twenty-five. The Rhonda Jennings California Trust expired ten years ago. The two remaining Trusts, the Kimberley K. Jennings California Trust and the Bradley A. Jennings California Trust, are the current partners in RKB Investments.

3.     RKB Investments ("RKB") was established for the purpose of buying, selling, leasing and dealing in real estate, and, at no time, has it ever been involved in any aspects of the firearm business. Specifically, it has never owned, directly or indirectly, any interest in Bryco Arms, Inc. ("Bryco"), B. L. Jennings, Inc., Jennings Firearms of Nevada, Inc., Jennings Firearms of California, Inc., Calwestco, or any other entity. RKB's only connection with Bryco was that RKB served as Bryco's landlord by leasing property and other existing structures to Bryco for the purposes of housing Bryco's corporate offices and manufacturing operation. RKB no longer owns or leases the above mentioned property to Bryco as the property was sold by RKB in approximately mid-October, 2002.

4.     RKB no longer owns property in the State of California and has never transacted or conducted business, or owned property, in Nevada, New York or any other state.

I declare under the penalty of perjury under the laws of the State of Texas that the contents of the foregoing affidavit are true and correct to the best of my knowledge.

Dated: Nov. 14, 02

Janice Jennings

Sworn to me this
14th day of Nov, 2002.

Date: 11/14/02

Notary Public

My commission expires on: 3/25/03

LESLIE K. SELF
Notary Public
STATE OF TEXAS
My Comm. Expires 03-25-2003

.AffidavitofJaniceJenningsRKBCaliforniatrusts.(B0301187)

3

# EXHIBIT 1
# Attachment to Affidavit

GENERAL PARTNERSHIP AGREEMENT

1

Parties & Date

THIS PARTNERSHIP AGREEMENT is entered into this 25TH day of _AUGUST_____, 1987, at _CHINO_____, California, and is effective on the _25TH_ day of _AUGUST___, 1987, by and between RHONDA D. JENNINGS TRUST DATED 05/4/81, hereinafter referred to as "R TRUST"; and KIMBERLY K. JENNINGS TRUST DATED 05/4/81, hereinafter referred to as "K TRUST", and BRADLEY A. JENNINGS TRUST, hereinafter referred to as "B TRUST".

2

Recitals

The partners desire to form a general partnership under the laws of the State of California for the purposes and on the terms and conditions stated in this Agreement.

The parties to this Agreement agree to become partners and to form a general partnership under the laws of the State of California, and therefore, agree as follows:

3

Partnership Name

The name of this partnership shall be "RKB INVESTMENTS".

4

Place of Business

The partners' principal place of business shall be at 5435 Dover Street, Chino, County of San Bernardino, State of California.  The principal place of business may be changed from time to time and other places of business may be established by actions taken in accordance with provisions of this Agreement that govern management of the partnership's business and affairs.

5

Term

The partnership shall begin as of the date of this Agreement and shall continue until one (1) of the partners shall give one hundred eighty (180) days' written notice to dissolve the partnership.  One Hundred eighty (180) days after

this notice is given, the partnership may dissolve and its
affairs shall be would up.

6

## Purpose

The purpose of this partnership shall be to buy, sell,
lease, and deal in services, personal property, and real
property as well as to engage in any business or undertaking
agreed on by the Partners.

7

## Partners' Capital Contribution

Each partner shall initially be entitled to credit to its
capital account for an equal one-third (1/3rd) of the
contribution to the partnership, as capital, cash in the amount
shown on Exhibit "A" attached hereto and made a part hereof by
reference.  No other debts or liabilities are assumed by the
partnership and each partner represents and warrants that no
other obligation attaches to this partnership.

8

## Additional Capital

The partners shall agree to any additional capital
contributions.

9

## Voluntary Contributions

No partner may make any voluntary contribution of capital
to the partnership without the consent of the other partners.

10

## Withdrawal of Capital

No partner may withdraw capital from the partnership
without the consent of the other partners.

11

## Profit and Loss

The partnership profits and losses shall be shared equally
among the partners.

2

12

Partners' Drawing Accounts

Each partner may be entitled to draw against profits such amounts as shall, from time to time, be agreed upon by the partners. These amounts shall be charged to the partners' drawing accounts as they are drawn.

13

Partnership Year End

The partnership shall be on a calendar year.

14

Account Method

The partnership books shall be kept on the ~~accrual~~ CASH basis.

15

Capital Accounts

An individual capital account shall be maintained for each partner, and that partner's capital contributions shall be credited to that account. No additional share of profits or losses shall inure to any partner because of changes or fluctuations in its capital account.

16

Partnership Books

Proper and complete books of account of the partnership business shall be kept at the partnership's principal place of business and shall be open for inspection by any partner or its accredited representatives at any reasonable time during business hours. The accounting records shall be maintained in accordance with generally accepted bookkeeping practices for this type of business.

17

Control of Majority in Number

Each partner shall participate in the control, management and direction of the business of the partnership, and in exercising this control, management and direction, each partner shall have the same vote as the other partners. In the case of a Trust being a partner and if the Trust authorizes more than one (1) Trustee to act on behalf of the Trust, the Co-Trustees shall agre between them and shall have one (1) vote in this partnership. A partner with Co-Trustees shall designate the

3

spokesman for the Trust-partner.

18

## Acts Requiring Partners' Consent

The following acts may be done only with the consent of all of the partners:

(a)  Borrowing money in the partnership's name;

(b)  Transferring, hypothecating, or compromising or releasing any partnership claim, except on payment in full;

(c)  Selling, leasing, or hypothecating any partnership property or entering into any contract for any such purpose;

(d)  Suffering or causing anything to be done whereby property may be seized or attached or taken in execution, or its ownership or possession otherwise endangered.

19

## Dissolution

On any dissolution of the partnership, the continuing operation of thepartnership's business shall be confined to those activities reasonably necessary to wind up the partnership's affairs, discharge its obligations, and preserve and distribute its assets.  Promptly upon dissolution, a Notice of Dissolution shall be published under Section 15035.5 of the California Corporations Code or any equivalent successor statute then applicable.

20

## Notices

Any written notice to any of the partners as required or permitted under this Partnership Agreement shall be deemed to have been duly given on the date of service if served personally on the party to whom notice is to be given, or on the second day after mailing if mailed to the party to whom notice is to be given by first class or air mail, certified, postage prepaid, and addressed to the addressee at the address stated opposite the party's name below, or at the most recent address, specified by written notice given to the send by the addressee under this provision;  notices to the partnership shall be similarly given and addressed to it at its principal place of business.

4

## Governing Law

This General Partnership Agreement ie executed and intended to be performed in the State of California and the laws of that state shall govern its interpretation and effect.

### 22

## Successors

This Partnership Agreement shall be binding on and inure to the benefit of the respective successors, assigns and personal representatives of the parties, except to the extent of any contrary provision in this Agreement.

### 23

## Severability

If any term, provision, covenant, or condition of this Partnership Agreement is held by a Court of competent jurisdiction to be invalid, void or unenforceable, the rest of this Agrement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

### 24

## Entire Agreement

This instrument contains the entire agreement of the parties relating to the rights granted and obligations assumed in this instrument. Any oral representation or modification concerning this instrument shall be of no force or effect unless contained in a subsequent written modification signed by all of the parties.

IN WITNESS WHEREOF, the parties have signed this

25TH Day of August 1987

*Bruce Jennings* Co TRUSTEE

*Janice Kay Jennings* Co TRUSTEE

5

General Partnership Agreement on the date first above stated.

RHONDA D. JENNINGS TRUST DATED 05/4/81:

By: _____ Trustee

By: _____ Trustee

Address: 5435 Dover St.

Chino Ca 91710

KIMBERLY K. JENNINGS TRUST DATED 05/4/81:

By: _____ Trustee

By: _____ Trustee

Address: 5435 Dover St.

Chino, Ca 91710

BRADLEY A. JENNINGS TRUST:

By: _____ Trustee

By: _____ Trustee

Address: 5435 Dover St.

Chino, Ca. 91710



OFFICIAL SEAL
CYNTHIA I MILES
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My comm. expires SEP 18, 1987

12060-A Central Avenue, Chino, CA 91710

6

EXHIBIT "A"

GENERAL PARTNERSHIP AGREEMENT

RKB INVESTMENTS

PARTNER'S CAPITAL CONTRIBUTION

RHONDA D. JENNINGS TRUST
   DATED 05/4/81............................$

KIMBERLY K. JENNINGS TRUST
   DATED 05/4/81............................$

BRADLEY A. JENNINGS TRUST...............$

7

# EXHIBIT 3
# Affidavit

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

JOAN TRUMAN SMITH

**V.**

BRYCO ARMS, Inc., et al.

CIVIL ACTION NO:
CV 02 3029 (JBW)

Honorable Jack B. Weinstein

### AFFIDAVIT OF BRADLEY JENNINGS

| | | |
|---|---|---|
| STATE OF TEXAS | ) | |
| | ) | **ss:** |
| COUNTY OF DENTON | ) | |

       Before me, the undersigned authority, personally appeared Bradley Jennings, who is known to me, and who after being duly sworn deposes and says:

       I, BRADLEY JENNINGS, being over eighteen (18) years of age and competent to testify as a witness and having personal knowledge of the facts set forth below do herein make oath in due form as follows:

       1.    I am a citizen and resident of Copper Canyon, Texas.  At approximately 12:30 p.m. on October 3, 2002, the Summons and Complaint directed to Bradley Jennings, individually, was delivered to Janice Jennings by a private process server in Copper Canyon, Texas.  Janice Jennings, my mother, has accepted service on my behalf in this case alone.

       2.    I have never been involved with, either indirectly or directly, the manufacture, sale or distribution of firearms in New York, or in any other state or country.  I have never been engaged in the firearms business in my personal capacity in any manner or at any time.

1

3.     I am not, nor have I ever been an employee, board member, officer, director, shareholder, agent or representative of Bryco Arms, Inc. ("Bryco"), B.L. Jennings, Inc. ("BLJ"), Jennings Firearms of Nevada, Inc., Jennings Firearms of California, Inc., Calwestco, or any other entity involved in the firearms business.

4.     I have never owned, rented or leased any property in the State of New York.  I have also never owned any assets in the State of New York, nor have I ever transacted or conducted any business in the State of New York.  I have never had a checking, saving or any other type of account with a bank in the State of New York, nor have I ever worked in the State of New York.

5.     I have never traveled to the State of New York in my personal or business capacity for any reason.  I have had no personal contact whatsoever with the State of New York.

2

I declare under the penalty of perjury under the laws of the State of Texas that the contents of the foregoing affidavit are true and correct to the best of my knowledge.

Dated: 11-14-02

Bradley Jennings

Sworn to me this
___14___ day of November 2002.

Date: 11|14|02

Winnie Stephenson
Notary Public

My commission expires on: 7-31-04

GINA K. STEPHENSON
Notary Public
STATE OF TEXAS
My Commission Expires 07-31-2004

---

Smith.AffidavitforBradleyJennings.(B0296196)

3