UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
JAQUIONE JOHNSON,

               Plaintiff,             03 Civ 2582 (JBW)

     -against-

BRYCO ARMS, et al.,

               Defendants.
-----------------------------------------------------x
JOAN TRUMAN SMITH,

               Plaintiff,             02 Civ 3029 (JBW)

     -against-

BRYCO ARMS, et al.

               Defendants.
-----------------------------------------------------x

PLAINTIFF TRUMAN SMITH'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Introduction:

> Capt. Renault:  I'm shocked, shocked to find that gambling is going on in here.
> Croupier:      Your winnings, sir.
>    - Casablanca (Warner Bros., 1942)

Defendant Atlantic Gun and Tackle, LLC is one of the handful of gun dealers

responsible for a sending a disproportionate number of crime guns into this state and

throughout the nation.  In the latest attempt to avoid responsibility, defendant moves now

for dismissal on the grounds of lack of personal jurisdiction after having produced

virtually no evidence in response to plaintiff's interrogatories and demands.  While

discovery is ongoing and the issues of defendants' non-compliance are before the

Magistrate Judge, this Court nevertheless has sufficient evidence before it from public sources alone to deny defendant's motion.

STATEMENT OF FACTS

    a)  <u>Evidence from Public Record:</u>

Atlantic Gun and Tackle, a firearm dealer, has been cited by several sources as one of the very small number of firearm dealers that account for most of the crime guns used in the United States.  Defendant appears third in "Ten Worst 'Bad Apple' Gun Dealers in America," the report of the Brady Campaign to Prevent Gun Violence on the ten dealers who "sold exceptionally high numbers of guns used in crime" and  "exhibited crime gun tracing patterns that ATF considers to be indicative of gun trafficking." Specifically, the Brady Center Found that from 1989 to 1995, Atlantic Gun & Tackle of Bedford Heights OH "sold 426 guns traced to crime;  256 of those guns had a "short time to crime" as defined by ATF.   The guns were involved in at least 5 homicides, 72 assaults, 15 robberies and 334 additional gun crimes.  The dealer also sold at least 613 handguns in multiple sales."  (A copy of the report is annexed hereto as Exhibit A.) <u>See also,</u> "A Few Bad Apples: Small Number of Gun Dealers the Source of Thousands of Crimes" A report by Senator Charles Schumer, December 1999, identifying only a gun dealer in Bedford Heights, Ohio as one of 140 Retail Dealers in 1400 homicide cases nationwide. (Exhibit B.)

Using more recent data, Dr. Howard Andrews found that out of approximately 80,000 dealers, Atlantic Gun & Tackle was in the top 75 dealers of crime guns recovered in New York City and the top 78 dealers of crime guns in New York State.  (<u>See</u> Table 27 and 27a admitted in <u>NAACP v. AcuSport</u> and annexed here as Exhibit C.)  Defendant

Atlantic Gun & Tackle is listed in the expert analysis of problem dealers by Lucy Allen, "1559 Dealers are in 1 or More of the Problem Dealer Groups, " with 909 traces overall for the period 1996 –2000. (This exhibit was received in evidence in NAACP v. AcuSport as Allen Exhibit 30, and is annexed here as Exhibit D.)

Based in part on the Allen data, a recent study by Americans for Gun Safety entitled "Selling Crime: A Handful of Gun Stores Fuel Criminals" (January 2004) available at http://www.americansforgunsafety.org included defendant in the list of 120 dealers (again out of a universe of approximately 80,000 federal firearm licensees) "who are flooding America's streets with crime guns".  These 120 represent "slightly more than one tenth of one percent of all licensed dealers, but are the source of 15% of the nation's crime guns."

According to the report, which is also based on data obtained from BATF through the Freedom of Information Act (all data has been supplied to defense counsel by subpoena), defendant Atlantic Gun & Tackle has had at least one inspection for the period 2000-2003 and received one violation.

     b)  Documents and Information Provided through Pretrial Discovery

Defendant did not move for dismissal against plaintiff Truman Smith at the time it so moved against plaintiff Jacquoine Johnson.  See Johnson v. Bryco, 304 F. Supp. 2d 383 (E.D.N.Y. 2004), preserving its affirmative defense of lack of jurisdiction in its answer to the complaint. (Docket No. 14, Answer of Defendant Atlantic Gun and Tackle Distributing Co, Inc., Second Affirmative Defense at 14.)  In interrogatories and document requests propounded to defendants, plaintiff Truman Smith nonetheless requested information and documents applicable to the determination of personal

jurisdiction in firearm litigation cases before this Court, as presented in <u>NAACP v. AcuSport Corp.</u>, 2000 WL 1789094 (E.D.N.Y. 2000). (A copy of defendant's responses to plaintiffs interrogatories and document requests is annexed as Exhibit E.)

Plaintiff requested from defendant Atlantic Gun & Tackle evidence of the total number of guns sold by defendant, the type of guns sold, the revenue received by defendant based on gun sales,  (Interrogatory and Document requests: 7, 8,).  Defendant was also requested to produce sales and distribution documents from defendant AcuSport and Bryco Arms, (Interrogatory and Document Requests: 9 (c) and (d.); BATF trace requests, (Interrogatory and Document Request 12); total revenue including tax returns, financial statements, profit and loss statements for the years 1996 – 2002 (Interrogatory and Document Request 15, (a) (b) and (c).)

Defendant has produced no documents responsive to plaintiffs request, arguing that the information is 'trade secret and /or proprietary, confidential or commercially sensitive and that disclosure of the sales records would violate an individual purchaser's privacy rights." Finally, defendant appears to argue that it should not be required to produce sales documents because they are not maintained in computerized form. (<u>See</u> Response 7.)  The sum total of defendant's production of documents, other than catalogues from manufacturers and a BATF compilation of state laws, was 6 sheets of paper (notably without any of the sales, revenue or distribution data requested.) The issue of defendants woefully deficient production was addressed before Magistrate Judge Pollak at a conference June 3, 2004 at which time she ordered defendant to at least produce some sales data estimates by June 8, 2004, in time for the argument on this matter before this Court.

The only evidence plaintiff has access to is from the public record, the analysis of the BATF data from the <u>NAACP v. AcuSport</u> case and a one page affidavit by Samuel Borselino, one of the owners of defendant Atlantic Gun & Tackle which was submitted in support of defendant's initial motion to dismiss for lack of personal jurisdiction in the Johnson case. This affidavit admits to revenue of approximately $1.5 million per year. <u>See</u> Affidavit of Sam Borselino at ¶ 9 (annexed to defendant's letter brief). This is astounding given the evidence noted above that defendant is one of a tiny fraction of dealers selling the majority of crime guns. The oft-raised argument that high numbers of traces relate solely to high volume is clearly belied by Atlantic, especially given the statement by defendant's owner that "a substantial amount of revenue relates to hunting and fishing supplies." <u>Id.</u>  Discounting the possibility that defendant is not reporting the income of a number of the guns it sells (the IRS being demonstrably more diligent in its enforcement than ATF), defendant's revenue is apparently due primarily to crime gun sales.

## ARGUMENT

In a series of cases, this Court has set forth factors to be considered in determining personal jurisdiction over handgun makers, distributors and dealers which recognizes the facts peculiar to the commerce in these products which is too often in jurisdictions with no local regulation of handgun sales and acquisitions and by lax merchandising practices that encourages the transfer of these products to out of state jurisdictions, especially those like New York State and City which have extremely strict laws governing handgun

acquisition and possession.  See  NAACP v. AcuSport Corp., 2000 WL 1789094

(E.D.N.Y. 2000);  Hamilton v. Accu-tek, 32 F. Supp. 2d 47 (E.D.N.Y. 1998).

The interstate movement of handguns from weak to strict law jurisdictions is now

widely accepted. See David Hemenway, Private Guns, Public Health (Univ. of Michigan

Press, 2004) 119, 149:

> [M]any youth and criminals in restrictive gun states obtain their firearms through
> gun running followed by secondary market sales.  Available tracing data show the
> influence of gun running from permissive to more restrictive states.  Florida has
> very permissive laws, while New York has very restrictive gun laws.  In Miami,
> 70 percent of guns used in adolescent crime and 77 percent of guns used in young
> adult crime originally came from Florida.  By contrast in New York City, only 6
> percent of guns used in adolescent crime and 10 percent of guns used in young
> adult crime originally came from New York state.  It is difficult to think of any
> other common consumer item that 90 percent of the time was originally sold at
> retail in some other state.

See also, David Kairys, "The Cities Take the Initiative" in Guns Crime and Punishment

in America (N.Y.U. Press 2003), 366.

Defendant is located in Bedford Heights Ohio and claims that its business is

conducted exclusively in that state. Ohio has comparatively weak gun laws, and no laws

regarding the issuance of permits, licenses or which impose restrictions on firearm sales

in addition to those imposed by federal law.  See Gun Control in the United States, A

Comparative Survey of Firearms Laws, Open Society Institute, http://www.soros.org; see

also "War Between the States, How Gunrunners Smuggle Weapons Across America" by

Senator Charles Schumer, April 1997 (Ohio gun laws rated "very weak".) For years

newspaper accounts have documented interstate gun trafficking between Ohio and New

York that thrives as a result of the disparity between the severity of the laws of the two

jurisdictions. See e.g., Lou Grieco, et al., The Gun Runner's Paradise: How Straw Men

Help Gun-Toting Criminals, Dayton Daily News, December 11, 2000 at 1A; Lou Grieco,

et al, *Private Sales Fuel the Black Market for Guns*, Dayton Daily News, December 12, 2000 at 8A; *Ohio Called Major Source of Illegal Guns to New York*, Dayton Daily News, February 23, 2001 at 1A; Tom Beyerlein, *Feds Drew Line on Gun Scheme*, Dayton Daily News, December 13, 2003 at A1.

 The BATF trace reports received by defendant almost every working day of the year (based on 909 traces over a four year period, see Exhibit D) document the market penetration of defendant's products. Defendant argues, however, that it cannot be held responsible for guns arriving in this State by *any* means, ostensibly including the extra-state or extra-licit means of which defendant has been provided knowledge but which members of the gun industry typically actively eschew. See  NAACP v. AcuSport, 271 F. Supp. 2d, 275,    (E.D.N.Y. 2003)(testimony of Robert Ricker on the industry's knowledge and refusal to take voluntary action to supervise dealers: "if the industry took voluntary action, it would be admitting responsibility . . . "the concept that if you are proactive and take steps to remedy the problem, then you have recognized that you are responsible partially for the problem.")

The Court of Appeals of the State of New York has likewise recognized that defendant gun makers, distributors and sellers may owe a duty to persons injured with their guns if there is a sufficiently "tangible showing that defendants were a direct link in the causal chain that resulted in plaintiff's injuries." Hamilton v. Beretta U.S.A. Corp., 96 N.Y. 2d 222, 234, 750 N.E. 2d 1055 (2001), and see Decision at 237: "[This] doctrine [negligent entrustment] might well support the extension of a duty to manufacturers to avoid selling to certain distributors in circumstances where the manufacturer knows or has reason to know those distributors are engaging in substantial sales of guns into the

gun-trafficking market on a consistent basis." How much of the overall public nuisance created by defendants' and others conduct in New York will be required to be demonstrated at trial of the specifics of these defendants' conduct with regard to a specific gun and the specific harm suffered by these plaintiffs remains to be determined. Some of the issues may include the necessity of a brief evidentiary presentation of the public nuisance of the gun trafficking market, its general causes and harms; the specific cause of plaintiff's injuries, that is the conduct in the instant transaction as well as the prior conduct of this defendant, Atlantic and its distribution partners defendant AcuSport, B. L. Jennings and Bryco. See e.g., Johnson v. Bryco Arms, 304 F. Supp. 2d 383, 390-2 (E.D.N.Y. 2004).

For the instant motion, at this juncture of pre-trial proceedings, however, plaintiffs have demonstrated evidence sufficient to defeat defendant's motion for dismissal or summary judgment on the issue of lack of personal jurisdiction. The decisive criteria to be examined in determining whether the Court has personal jurisdiction over a defendant handgun company, include the following:

1) crimes committed in New York with defendant's handguns;

2) total number of handguns defendant manufactured and sold in the United States;

3) number of handguns sold by the defendant in New York;

4) value of gun-related products sold by defendant in New York;

5) number of "trace" handguns linked to criminal investigations in New York that are attributable to the defendant;

8

6)  sales price of the defendant's handguns (e.g. very high priced collectors' guns not designed for use);

7)  type of gun and its intended use (e.g. very large handguns used in hunting large game such as heavy weapons requiring two hands or a stand);

8)  connection with the defendant's related companies;

9)  distribution methods and their possible effects on crimes in New York;

10) defendant's total revenue from the United States and New York markets.

NAACP v. A.A. Arms, 2003 WL 21242939 at *3-5 (E.D.N.Y. April 1, 2003), and see Johnson v. Bryco Arms, 304 F. Supp. 2d 383, 397 (E.D.N.Y. 2004).

Defendant has submitted no evidence on any of these 10 criteria despite being specifically requested to do so and having moved on allegations that sufficient 'evidence' had been provided to plaintiffs to permit them to respond to the motion. (Defense counsel indicated before the Honorable Cheryl Pollak that the timing of the motions may have precipitated its motion for dismissal prior to the completion of pre trial discovery before the Magistrate Judge.) Defendant merely attached the affidavit of Mr. Borselino that responds, by bare statement, to1 of the 10 criteria.  However, public data is available to fill in the gaps of defendant's non-compliance.  The public data discloses ample evidence of that defendant is subject to the jurisdiction of this Court.

NAACP Personal Jurisdiction Criteria:

Criteria 1 (and 5):  Publicly available data demonstrates that jurisdiction pursuant to NAACP personal jurisdiction factors 1 and 5 exists based solely on its number of crime guns recovered in New York City during the four year period between 1996 to 2000.  As presented above, defendant is among the top 75 dealers for guns recovered in

crime in New York City, with 17 guns recovered during the four years from 1996 through

2000, and among the     in New York State with 20 guns recovered for the same period.

See Andrews Exhibit B.

Criteria 2:  Defendant has refused to provide evidence or documents relating to

criteria 2: total number of handguns sold by defendant in the U.S. (Exhibit E,

Defendant's Responses to Interrogatories and Requests for Documents.)  In the Borselino

Affidavit, defendant indicates that total revenue is between 1.2 and 1.5 million.

Criteria 3 and 4:  Defendant has supplied only the Borselino Affidavit, which

indicates that as an Ohio retailer, there can be no direct sales of firearms to New York

residents and thus no revenue generated by direct sales of guns in New York.  Without an

examination of the sales data and an examination of repeat purchasers, plaintiff has no

way to test or refute this statement.

Criteria 6-8:  Defendant has provided no responses or documents on the type of

guns sold.  Criteria 8 appears not to be applicable here.

Criteria 9:  Defendant's responses, prepared by Sam Borselino, evidence

defendant's contempt for firearm laws, law enforcement, and the lives of citizens lost due

to its reckless merchandising practices.  See Defendant's Responses (Ex. E)     .

Instead of addressing the facts that defendant appears on the list of 10 of the worst dealers

in America, defendant includes a letter from BATF indicating that they may be the

largest dealers.  Clearly in the case of Atlantic gun however the excuse of high volume is

not applicable.  (With 1.2 to 1.5 million in revenues, the volume cannot be high.) The

other excuse seemingly offered in defendants' submission is that ATF is supervising

defendant's business.  Defendant's admission and the public record discloses otherwise:

ATF has visited Atlantic only once in the last 5 years, despite the fact that it is one of the highest volume crime gun dealers.  See Commerce in Firearms,

The fact that defendants really do have no sales practice manuals or directives to sales staff, statements by owners indicating review of data to try to improve the safety of the merchandising never ceases to amaze. But, cf. Testimony of Robert Ricker,     : NAACP v. AcuSport,   Taken together, the evidence presented discloses that this defendant, albeit situated in Ohio, has demonstrably, substantially and consistently availed itself of the strictly regulated New York handgun market over a long period of time.  Defendant's conduct requires the imposition of jurisdiction by this Court.

CONCLUSION

Based on the foregoing, it is respectfully requested that defendant's motion be denied in its entirety and for such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        June 4, 2004

                          Respectfully submitted,


                          Elisa Barnes (EB 4811)
                          Law Office of Elisa Barnes
                          111 Broadway, 4th Floor
                          New York, New York 10006
                          (212) 693-2330
                          (212) 693-2334 Fax


TO:

Counsel of Record