# LESTER SCHWAB KATZ & DWYER, LLP
## 120 BROADWAY
### NEW YORK, N.Y. 10271-0071

(212) 964-6611
FAX: (212) 267-5916

PAUL L. KASSIRER
Writer's Direct Dial: (212) 341-4355
E-Mail: pkassirer@lskdnylaw.com

**NEW JERSEY OFFICE**
24 LACKAWANNA PLAZA
MILLBURN, N.J. 07041
(973) 912-9501

November 1, 2004

*Via Facsimile (718) 260-2358*
*and ECF Only*

Magistrate Judge Cheryl L. Pollak
United States District Court
Eastern District of New York
US Courthouse
225 Cadman Plaza East
Brooklyn, New York  11201

      Re: (1) **Jaquione Johnson v. Bryco Arms, Inc., et al.**
          **Civil No.         : CV-03-2582**

         (2) **Joan Truman Smith, As Administratrix of the Estate of Anita Smith,**
            **Deceased v. Bryco Arms, et al.**
          **Civil No.         : CV-02-3029**

Dear Magistrate Judge Pollak:

      We write jointly on behalf of defendants AcuSport Corporation ("AcuSport") and Atlantic Gun and Tackle, Inc.  On Friday, we received via ECF, this Court's Order (dated October 28, 2004) directing "that discovery of defendants' finances should proceed at this time," without providing defendants with the opportunity to be heard on 1) our interpretation of Judge Weinstein's intent as to the timing of such disclosure; 2) the law forestalling such disclosure if, and until, there is a compensatory verdict; and 3) our specific objections to each plaintiff's numerous and overreaching demands in this regard.

      It bears note that, having now received the transcript of the oral argument of the plaintiffs' motion to amend the complaints before Judge Weinstein on October 22, 2004, there is no reference to the ruling Ms. Barnes quoted in her correspondence to this Court.  Specifically, Judge Weinstein never stated that the punitive damages phase of the trial would begin "immediately" following the compensatory damages phase.  In fact, Judge Weinstein held that there would be a short adjournment:

> *The Court:  All right.  The amendment is permitted.  The case will be tried in two phases.  One, liability, and then the same jury will try punitive damages.  The parties will restrict themselves in the liability and*

LESTER SCHWAB KATZ & DWYER, LLP

November 1, 2004
Page 2

> *actual damage phase to aspects of the case that do not raise punitive*
> *damage issues.  So we will have no Rule 403 problems.  Then, should*
> *there be a ruling by the jury in favor of the plaintiff, and should it not be*
> *set aside, we will have the second phase.  It will be prepared.  We can*
> *have a short adjournment…*

(Referenced portions of the October 22, 2004 transcript are annexed hereto as Exhibit "A," p. 9).
Judge Weinstein also noted that the punitive damages were not a given, and that the
determination whether punitive damages were warranted would necessarily need to be decided
following the compensatory damages phase, as follows:

> *Mr. Gross:  If you Honor pleases, you indicated that the seconds (sic)*
> *phase would be a jury ruling on punitive damages.  That would only*
> *happen if Your Honor ruled that punitive damages properly belonged in*
> *the case?*
> *The Court:  Correct.*
> *Mr. Gross:  So there is nothing – it was not an automatic situation is what*
> *I –*
> *The Court:  Absolutely right.  You can make a motion at the appropriate*
> *time, when we will have a better understanding of what the facts are.*

(October 22, 2004 Transcript, p. 10).  In light of the Court's determination that a) there is to be a
short adjournment between the trial phases, and b) the potential that punitive damages may not
survive a motion to dismiss, the appropriate time to conduct any discovery into the defendants'
financial records would be during the "short adjournment" period.

Although this Court has noted that the "the nature of these defendants' businesses and the
Court's past experience with the defendant's records" requires disclosure to be conducted at this
juncture – implying that the defendants have been dilatory or lax in their discovery responses –
this is simply not accurate.  For example, in its initial disclosure, defendant AcuSport timely
produced more than 32,000 pages of documents, without any Order compelling same, and it
recently produced more than 1,200 pages of documents in a reasonable period of time following
this Court's recent oral argument on the parties' combined discovery objections.  Defendant
Atlantic Gun & Tackle initially produced over 2200 documents, despite plaintiffs'
misrepresentations to the Court that defendant produced only "three (3) documents."  There is no
need for extended discovery given the minimal disclosure permitted under prevailing case law,
as discussed below.  If this Court were to set forth the parameters for this disclosure now,
defendants would be able to have this information at-the-ready if the need arose for a punitive
damages phase of the trial, thereby ensuring expeditious discovery during the "short
adjournment" period.

Even if discovery is to proceed into the defendants' financial records at this time, this
Court has not addressed the defendants' objections to the scope of the disclosure sought by
plaintiffs.  It is well settled New York State and Second Circuit case law that a plaintiff is only

LESTER SCHWAB KATZ & DWYER, LLP

November 1, 2004
Page 3

entitled to a general statement of net worth, and that plaintiff must show a "compelling need" to discover tax returns, *i.e.*, where such financial information cannot be obtained through deposition or other alternative means.  See, e.g., Agudas Chasidei Chabad of U.S. v. Gourary, 1989 WL 38341, at *1 (E.D.N.Y. 1989)(citations omitted); Open Housing Center, Inc. v. Kings Highway Realty, 1993 U.S. Dist. LEXIS 15927, at *11 (E.D.N.Y. 1993);  Hazeldine v. Beverage Media, Inc., 1997 WL 362229, at *4 (S.D.N.Y. 1997);  Evans v. Calise, 1994 WL 185696, at *2 (S.D.N.Y. 1994).

In Rupert v. Sellers, 48 A.D.2d 265, 272-273, 368 N.Y.S.2d 904, 912 (4th Dep't 1975), the Court gave the following rationale for this limited discovery:

> *Since the purpose of presenting to the jury the amount of defendant's wealth is only to furnish to them a guide for suitable punishment, there is no need for a plaintiff to explore the details of a defendant's assets and liabilities.  A mere statement of defendant's respective total net worth is sufficient.  In the event that plaintiffs in this case obtain such special verdict they shall then be entitled to have each defendant submit, orally or in writing, a sworn statement of his net worth, and in connection therewith may examine copies of each defendant's income tax returns for not to exceed five years immediately preceding.  Although such returns may not reflect accurately defendants' net worth, they will at least show defendant's earnings during such period and will have a direct bearing on their financial strength regardless of what disposition they may have been making of their capital assets.  Such information will be germane to the question which the jury must answer, among other things, as to the amount of verdict which should be awarded to plaintiffs as appropriate punishment of defendants for their misconduct.*
>
> *We recognize that in some respects this procedure may delay the final disposition of a case.  But such delay will be compensated (1)  by the protection of defendants from harassment by discovery of their net worth in cases where plaintiffs have only alleged, but have not established, a cause of action for punitive damages and (2) by the time saved in barring such discovery in cases where plaintiff cannot prove that he is entitled to punitive damages.  Moreover, the limited discovery to which a plaintiff is entitled as to defendant's wealth in a punitive damage case should be conducted expeditiously, and in most cases it should be completed and the necessary evidence be available for presentation to the same jury which rendered the special verdict.*  (Emphasis added)

The very reasons for limiting discovery into the defendants' financial records expressed in Rupert are at play in these cases:  Plaintiffs have merely alleged, but not established their entitlement to punitive damages, and there is no need to waste time on discovery into a highly sensitive and privileged area that may never, and indeed is unlikely, to ever be reached.  Please

LESTER SCHWAB KATZ & DWYER, LLP

November 1, 2004
Page 4

keep in mind our comments when last before you, that plaintiffs cannot, as a matter of law, even support a *prima facie* showing of a straw purchase.  Both Angela Freeman and Bernard Gardier were, as a matter of judicial notice, eligible to purchase a handgun.

As noted in the defendants' opposition to the plaintiffs' previous motion to compel, plaintiffs seek far more than a general statement of the defendants' wealth.  Plaintiffs seek broad, across-the-board disclosure of the defendants' financial records, including the following:  a statement of the acquisition cost of all firearms purchased for the period January 1, 1996 through May 31, 2002; copies of invoices, balance sheets, profit and loss statements documenting the acquisition cost of these firearms during this period; annual revenue for the years 1996 through 2002; copies of tax returns (for the years 1996 through 2003), annual reports, audited financial statements, annual profit and loss statements, and *business and marketing plans* (for 1996 through 2002).  See, e.g., Plaintiff Smith's First Set of Interrogatories and Document Requests, ¶¶ 6, 8, 15, a copy which is annexed hereto as Exhibit "B."

At the October 1, 2004 Conference, this Court indicated that the defendants' objections to this disclosure would be addressed following the District Court's determination of the plaintiffs' motion to amend the Complaints to add punitive damages:

> *The Court:  The [punitive damages] motion is before [Judge Weinstein]. What I'm going to say is at this point, I'm not going to order the financial records disclosed pending Judge Weinstein's decision on the motion to amend.  If it becomes an issue, we'll deal with it then.*

(Referenced portions of the October 1, 2004 transcript are annexed hereto as Exhibit "C," p. 102).

With all of the foregoing in mind, as well as the Court's generalized statement that "discovery of defendants' finances should proceed…", we respectfully request an opportunity to brief and argue:  1) our interpretation of Judge Weinstein's intent as to the timing of such disclosure, 2) the law forestalling such disclosure if, and until, there is a compensatory verdict, and  3) our specific objections to each plaintiff's numerous and overeaching demands in this regard.

Respectfully Submitted,


PAUL L. KASSIRER

PLK:aas/647277

LESTER SCHWAB KATZ & DWYER, LLP

November 1, 2004
Page 5


cc:


*Via Facsimile (212) 693-2334*
Elisa Barnes, Esq.
111 Broadway, 4th Floor
New York, New York  10006


*Via Facsimile (212) 967-2105*
Taub & Marder, Esqs.
450 Seventh Avenue, 37th Floor
New York, New York  10123
**Attn:  Kenneth Marder, Esq.**


*Via Facsimile (212) 599-6385*
Renzulli, Pisciotti & Renzulli, LLP
300 East 42nd Street
New York, New York  10017-5947
**Attn:  Leonard Rosenbaum, Esq.**