March 23, 2005

Honorable Jack B. Weinstein
Senior District Judge
United States District Court – EDNY
225 Cadman Plaza East
New York, New York 11201

        RE:  Truman Smith v. Bryco Arms, et al., 02 Civ 3029 (JBW)

Dear Judge Weinstein:

      I submit this letter brief on behalf of Joan Truman Smith in further opposition to the motion to dismiss for lack of personal jurisdiction by defendant Atlantic Gun & Tackle.  Plaintiff relies on her previously submitted brief in opposition, dated June 4, 2004, which is being re-submitted to the Court.  I had planned to submit papers with Ms. Fabella, counsel for Jaquoine Johnson, but just this afternoon decided to submit papers separately on behalf of Ms. Truman Smith.  Accordingly, I rely on the extension granted by the Court to counsel for co-plaintiff that permits the filing of opposition papers by March 23, 2005.

      As presented in the June 4, 2004 brief, this Court has set forth 10 factors to be considered in an analysis of personal jurisdiction.  See NAACP v. A.A. Arms, 2003 WL 21232939 at *3-4 (E.D.N.Y. 2003); Johnson v. Bryco Arms, 304 F. Supp. 2d 383, 397 (E.D.N.Y. 2004).  Discovery has been had on most of these matters and the evidence adduced in this matter, along with the publicly available evidence, demonstrates defendant's amenability to the jurisdiction of this Court.

a) Number of crime guns sold by Atlantic

Jurisdiction rests on the number of defendant's crime guns (as evidenced by ATF traces in which defendant is the last retail seller) recovered nationwide and in the State of New York. Ms. Allen, plaintiff Truman Smith's expert, has presented this data as Attachment D to her Report of March 8, 2005 (a copy of which is attached as Exhibit A.) During the period prescribed by the Courts for examination in this case, that is 1996-2000, Atlantic received 795 requests from ATF to trace crime guns. Given the lack of data on dealer sales nationwide, it is difficult to do more than simply cite numbers to the Court. However, from a review of a number of sources, it is apparent that this number is very large, and certainly larger than the vast majority of dealers. In his report dated March 7, 2005, plaintiff's expert Joseph Vince states that Atlantic has more crime gun sales than any other dealer in Ohio. (The Vince report is annexed as an exhibit to the letter brief of counsel for Jaquoine Johnson.)

Public sources, such as the Brady Center, Senator Schumer and Americans for Gun Safety consistently rank defendant Atlantic in the top ten most problematic dealers, by trace numbers alone. (References and documents are annexed to plaintiff's initial brief in opposition) ATF has also ranked Atlantic as one of the select group of 480 worst dealers (out of a universe of over 100,000) by placing it on the 'demand program.' (See Exhibit B, BATF 'Demand' Letter)

Of the 795 crime guns recorded by ATF, 27 guns were recovered in crime in the State of New York. (Ex. A, Allen Report, Attachment D, p. 20.)

b) Number of guns sold

Defendant was able to provide only the sketchiest estimate of the number of guns sold and plaintiff was unable to obtain all acquisition and disposition records in order to tally the number ourselves. Accordingly, based on the records defendant submitted to ATF with its annual license renewal, defendant listed 4,370 gun sales for the period of 1997-2000, or approximately 1,457 per year. (Exhibit C.)

c) Defendant's revenue

Defendant's revenue, as listed in its tax returns and by affidavit of its owner, Sam Borsellino, hovers around a million dollars per year. Defendant refused or was unable to provide information on its revenue—gross or net—derived from the sale of guns. (Exhibit D, defendant's tax returns.)

d) Sales in New York

Defendant is an Ohio dealer; accordingly, under federal firearms law, Atlantic would have no direct sales to residents of New York. Defendant does not operate any sort of mail order business or supply products other than firearms to residents of this State.

As the trace records disclose, however, defendant indirectly supplies guns to New York by its reckless distribution practices.

   e)  Defendant's distribution methods and their effects on crimes in New York

  Defendant has provided no documentary evidence indicating any sort of distributional safety measures. Defendant does not even use and is only passingly familiar with the watered-down gun industry safe distribution materials entitled "Don't Lie for the Other Guy" (which the Court may recall in poster and video form from the NAACP trial.)

  Defendant's safe sales practices consist entirely of intuition—that is "the power or faculty of attaining to direct knowledge or cognition without evident rational thought and inference." (Webster's Collegiate Dictionary, 11th ed.). The advantage of this fact-free manner of running a gun business is that it allows you to sell guns to anyone (as evidenced by the objective, reality-based ATF records) while exculpating yourself by maintaining that the owners and employees of Atlantic are able to thwart a potential straw purchaser or trafficker because they simply "know it when I see it." (See Depositions of William Borsellino and Sam Borsellino.) Defendant's principals and employees know certain sales are illegal, but go ahead and make them anyway. (See Deposition of William Borsellino at 40-1, annexed to Johnson letter brief; see also Angela Freeman Deposition, annexed to Johnson brief at 168-71.) Defendant's complete lack of safe sales mechanisms, training or rules explains its position as the dealer or choice for traffickers and criminals. See Truman Smith, June 4, 2004 brief at 2-3.

  Defendant's response—in depositions here and by counsel in other cases—has been based on volume: 'we have more traces because we sell more guns.' Because of the lack of publicly available data on gun sales at the dealer level (and a great paucity of sales data even from defendants), plaintiffs have had a difficult time effectively countering this argument. However, in her work in NAACP v. AcuSport, and here, Ms. Allen has demonstrated the causal connection between dealer practices and crime gun sales. (See Exhibit A, Allen Report, pp. 15-19, and attachment D.) Atlantic's crime gun indicators are listed by Ms. Allen in attachment D. Ms. Allen's analysis presents an objective link between dealer practices and crime gun sales, which are unrelated to the volume of Atlantic's sales. Ms. Allen's Attachment D provides empirical evidence of the causal link between defendant's reckless distribution practices and the number of crime guns it is responsible for. Ms. Allen's statistical findings are mirrored in the anecdotal evidence from the acquisition and disposition records, which show the same purchaser returning to buy crime guns on four separate occasions, and a number of purchasers returning twice to buy crime guns. (Examples of these 'Same Purchaser' indicators are annexed as Exhibit E; see also Allen Report, at 18-19) Ms. Allen's findings regarding multiple sales are similarly illustrated in the acquisition and disposition records of purchasers who bought 4, 5 and even 8 inexpensive "Saturday Night Special" handguns at one time, one or more of which ended up in crime. (Exhibit F.)

      The other criteria outlined by the Court, such as the sale of high price guns and the sale of guns for specialized purposes, such hunting large game, are inapplicable to this determination.  Defendant has not provided either sales data or sales of guns by make and model, although it does appear from the trace data (Allen, Attachment D) and the acquisition and disposition records that defendant sells a large number of 'Saturday night special handguns.  The gun used in the shooting at issue in this case was an inexpensive, Saturday night special, semi-automatic handgun.

      In conclusion, based on plaintiff Truman Smith's prior submissions, the submissions of plaintiff Johnson, the pleadings and discovery aduced herein, it is respectfully requested that this Court deny defendant's motion in its entirety, and for such other and further relief as this Court may deem just and proper.

                                       Respectfully submitted,

                                       Elisa Barnes

enclosure (for the Court only)
via hand delivery

ECF Filing to Counsel of Record